IOWA-MISSOURI WALNUT COMPANY, A CORPORATION, APPELLANT, V. CARL B. GRAHL, RESPONDENT.—170 S. W. (2d) 437.

Kansas City Court of Appeals. April 5, 1943.

1094

*Livengood & Weightman* for appellant.

*Ellis G. Cook* for respondent.

SPERRY, C.—Iowa-Missouri Walnut Company, a corporation, plaintiff, sued Carl B. Grahl, defendant, for alleged breach of contract. Defendant filed a general denial and counterclaim. Verdict and judgment were for defendant on his counterclaim and against plaintiff on its petition. Plaintiff appeals.

The petition, in part, is as follows:

"Plaintiff states that on the 25th day of May, 1941, it entered into a certain agreement in writing which said agreement is in words and figures as follows, to-wit:

" 'Iowa-Missouri Walnut Company    No. 6277
" 'Quitman, Mo.   May 25, 1941
" 'At Sight Pay to the order of Carl B. Grahl $300.00 Three hundred and 00/100 Dollars.
" 'For all walnut trees located on Joe Carden Farm 2 ½ Southeast of Quitman Mo.
" 'To Iowa-Missouri Walnut Company,
" 'St. Joseph, Missouri
" 'Clear Through
" 'First National Bank,
" 'St. Joseph, Mo.

" 'Value Received and charge
" 'to Account of
" 'C. Ross Ellis.'

"On the reverse is the following:
" 'I hereby endorse this draft in its entirety to

_____

"who having read same, by 'their endorsement herein, admit it to be a true statement of the transaction, involving the Iowa-Missouri Walnut Company, Inc., in no way.

" 'An Independent Contractor
" 'Carl B. Grahl
" 'Authorized Agent.'

"which said agreement is endorsed on the back by the defendant; that by the terms of said agreement, the plaintiff purchased from the defendant, and paid the defendant for approximately one hundred twenty (120) growing and un-severed walnut trees, located on what is known as the Joe Carden Farm, two and one-half miles southeast of Quitman, Missouri, and described as follows, to-wit:"

It is then alleged that plaintiff has performed its part of said contract; that defendant delivered ninety of said trees and refused to permit plaintiff to take the remaining thirty; and that the reasonable value of said trees so retained is $150, for which sum plaintiff prayed judgment.

Defendant filed a general denial and counterclaim wherein he alleged that he entered into a verbal contract with plaintiff for the sale of seventy trees for the sum of $300; that defendant took the seventy trees sold to it and,' in addition thereto, twenty-two more; that the twenty-two additional trees taken were of the value of $110; that plaintiff carelessly and negligently cut trees so that same fell on his fences, destroying same to his damage in the amount of $125; and he prayed judgment for the total sum of $235 on his counterclaim.

Plaintiff, in chief, offered the testimony of but one witness, its agent, Ellis, who acted for plaintiff in making the contract between

it and defendant. He testified that, in May, 1941, he purchased from defendant some walnut trees. He was handed the above-mentioned instrument and, with reference thereto, stated: "It is a check for $300, calls for all walnut trees." The check was then introduced in evidence. Witness further testified that when the check was given "I thought there would be one hundred and twenty trees;" that he valued them at $2.50 each; that ninety were taken and, in April, 1942, defendant ordered plaintiff to quit cutting trees; that the remaining thirty trees which plaintiff did not get were worth $5 each. On cross-examination he stated that the contract was made and check delivered in the presence of one Reese, a lumber dealer of that community; that witness and Reese talked to defendant, looked, at the trees, measured same, estimated the board feet thereof, and went back to defendant and the contract was then made. The record shows the following:

"Q. What did you say to him when you got over there? A. Asked him how much he wanted for the trees.

"Q. Did you say how many? A. No, sir.

"Q. What did he tell you? A. He wanted $300.

"Q. What did you offer him? A. I didn't make him an offer then.

"Q. When did you make him an offer?

"MR. LIVENGOOD: We object to this on the ground, all prior bargaining are merged in the contract. It can not be changed by testimony.

"THE COURT: Objection overruled.

"A. Well, he finally said he would take $300 for seventy trees, but I would not give him $300 for seventy trees.

"Q. Did you offer him $280 for those seventy trees? A. No, sir.

"Q. And you say when he offered to take $300 for seventy trees, then he took $300 for all he had? A. I told him I would give $300 for all the trees.

"Q. And you say he took it? A. Evidently he did.

"Q. What was to be done with the tops of the trees? A. There was not anything said about that.

"Q. Well, do you claim the tops of the trees over there? A. I could.

"Q. I didn't ask that. I asked if you did? A. I do.

"MR. LIVENGOOD: I object for the reason it is plain, unambiguous; that it can not be changed by parol evidence.

"THE COURT: Objection overruled.

"Q. (MR. COOK) Have you charged for the tops of the trees? A. Not until just now.

"Q. Oh, you are starting out now? A. They are our trees."

He further testified that after defendant stopped the tree cutting he asked defendant why he stopped it, and defendant told him he thought plaintiff had gotten all the trees it was entitled to.

Defendant offered the testimony of Reese, who stated that he accompanied Ellis to defendant's farm to look at the trees and was present when Ellis and defendant discussed the transaction. He was permitted to give testimony, over objections, to the effect that Ellis told defendant he would pay $270 for seventy trees; that witness and defendant retired and talked over the proposition; that eventually Ellis said he would pay $300 for seventy trees; that defendant said he would accept that sum if the insurance company, which held a mortgage on the farm, would consent; that the parties agreed that the tops were to go to defendant; that Ellis wrote and delivered a check to defendant and witness heard no more about the matter until he was subpoenaed as a witness.

Defendant's testimony, regarding the transaction, was to the same effect as that of Reese. He testified, over objection, that he did not read or know that "For all walnut trees: . . . " was written on the check; that there are a number of nice walnut shade trees in the front yard and that he would not have sold them; that the farm consists of 392 acres and he did not know how many trees there were; that plaintiff began cutting the trees in January, 1942; that he later counted ninety-two trees that were cut; that eighteen or twenty were negligently permitted to fall on the fences and the cost of material and labor for repairs necessitated thereby was $150; that the twenty-two trees taken, above the seventy sold, were worth $4 each.

There was other testimony offered by plaintiff, in rebuttal, and by defendant, in surrebuttal, but the above is sufficient for disposition of the issues here presented.

Plaintiff's contention is that the instrument above set out constitutes a written contract between the parties; that it is plain, complete and unambiguous; and that its terms may not be varied by parol evidence. In support of its position it cites and relies on White v. Elwell, 189 Mo. App. 36, and other cases. If the instrument herein pleaded is, in fact, a complete, unambiguous written contract between the parties, then the rule is that its terms may not be varied by parol evidence.

Defendant's contention is that there was a verbal contract between the parties for the sale of seventy walnut trees and that parol evidence is properly admissible to prove the terms of the contract.

Defendant's position is well taken. The instrument pleaded is not, primarily, a contract, but purports to be, and is, a check. [Sec.

3200, R. S. Mo. 1939.]   Ellis testified that it is a check.   In 13 C. J., page 278, it is said:

"An offeree is not bound by the unknown terms of a document by his acceptance of the same without objection, where the document delivered to him purports to be, and would by a reasonable man be understood to be, merely a check or voucher, and not a contract, as in the case of a baggage receipt or check, an ordinary railroad ticket, and other receipts or papers of similar character." [See also 17 C. J. S., page 377.]

The rule requiring a party who signs a contract to read it and holding him bound by its provisions is not a "rule of thumb" but one of equity and sense. [17 C. J., page 490.] It does not apply where the contract is ambiguous and requires explanation. [17 C. J. S., 490. See also Lefebvre v. Nickolai, 236 N. W. (Wis.) 684.]

Application of the above law to the facts in the case at bar requires us to hold that defendant was not bound by words written on the face of a *check* by affixing his signature, as an indorsement, on the reverse side thereof, where, as here, there is evidence which tends to prove that the words written on the face of the check were not called to his attention at the time and he did not learn of them prior to his signature, and where there is convincing evidence tending to prove that such words do not express the contract agreed on by the parties.   Under the circumstances here shown it was proper to receive parol evidence for the purpose of explaining the instrument and establishing the true terms of the contract agreed upon by the parties.

Plaintiff contends that, since defendant's testimony tended to prove that plaintiff had taken twenty-two more trees than it was entitled to take, said trees being valued at $4 each, or $88, the verdict for $92 is not supported by any evidence.   If the evidence concerning the taking of trees and their value were all of the evidence tending to prove defendant's damage the ruling in Huddleston v. Ozark Acceptance Corporation, 125 S. W. (2d) 1. c. 83, 84, cited by plaintiff, might govern this case; but there was other evidence before the jury in the case at bar.   Defendant offered testimony which tended to prove that trees were carelessly and negligently caused to fall on his fences, necessitating repairs at great expense for labor and materials, to-wit, $150, all in addition to the taking of the trees.   The amount of the verdict was fully supported by the evidence.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.   The judgment is affirmed.   All concur.