**Verl MORRIS and Elsie Morris, Plaintiffs-Respondents,**

v.

**Jimmy F. PERKINS, Defendant-Appellant.**

No. 11515.

Missouri Court of Appeals, Southern District, Division One.

Aug. 19, 1980.

Don M. Henry, Henry, Henry & Henry, West Plains, for defendant-appellant.

Michael L. Shortridge, Shortridge & Eakes, Willow Springs, for plaintiffs-respondents.

FLANIGAN, Chief Judge.

Plaintiffs Verl Morris and Elsie Morris, husband and wife, entered into an oral agreement with defendant, a well ·driller, for the drilling of a well on plaintiffs' land. After the well was drilled, plaintiffs paid defendant $3,016.79.[1]  Plaintiffs' petition alleged that as part of the transaction defendant "agreed that said well would furnish an adequate supply of water for plaintiffs' use."  The petition further alleged that the well "furnished no water whatsoever to plaintiffs," and sought damages for breach of the agreement.  The trial court,

---

1. Although plaintiffs' testimony was, and defendant admitted, that the amount of the payment was $3,116.79, the petition alleged that the payment was $3,016.79, the amount of the judgment.  This court attaches no significance to this discrepancy since neither side does so.

sitting without a jury, found for plaintiffs and awarded them $3,016.79. Defendant appeals.

Defendant's first point is that the trial court erred in failing to enter judgment for defendant "because the evidence showed that plaintiffs breached the contract by refusing to pay for additional drilling and defendant did not refuse to perform additional drilling on the well until after he was informed that plaintiffs were not going to pay another dime on the well."

In a nonjury case, when conflicting testimony has been presented to the trial court, the general rule is that the appellate court, mindful of the opportunity of the trial judge to weigh the credibility of the witnesses, will defer to his resolution of the conflicts. *S. G. Adams Printing v. Central Hardware Co.*, 572 S.W.2d 625, 628[2] (Mo. App.1978). Nothing in the instant record justifies a departure from the general rule.

Defendant's first point is based on the factual assumption that plaintiffs refused to pay for additional drilling and that defendant was informed that plaintiffs were not going to pay another dime on the well. Although defendant's evidence, if believed, would support those assumptions, plaintiffs' evidence was to the contrary. Plaintiff Verl Morris testified, contrary to defendant's evidence, that he did not tell anyone that he was not going to pay another dime on the well. Morris also testified that he knew that if defendant "drilled additional footage I would have to pay for it."

Deferring to the trial court's view of the conflicting evidence, this court holds that a sufficient answer to defendant's first point is that it has no factual foundation and accordingly lacks merit.

Defendant's second point is that the trial court erred in awarding plaintiffs damages in the amount of $3,016.79. The point assigns the following reasons: (a) If additional drilling would correct the problem of lack of water, plaintiffs, under the agreement, had a duty to pay for additional drilling and they sustained no damage unless they showed that the cost of additional drilling, if performed by a third person, would have exceeded the amount to which defendant would have been entitled if defendant did the additional drilling; (b) Plaintiffs failed to mitigate their damages after the alleged breach of contract by defendant in that plaintiffs did not have anyone else look at the well or perform work on it.

The oral agreement entered into between the parties called for defendant to drill a well on plaintiffs' land. According to plaintiff Verl Morris, "Defendant agreed to drill the well and give us plenty of good clean water and if at any time the well did not produce, he would come back and redrill and if not possible he would have to drill a new well. . . . If he had to drill deeper he would charge us for the additional footage only." According to Mrs. Morris defendant "guaranteed that he would give us a good well, good clear water, and we would never have any sand or dirt in the house."

Defendant did not deny the essence of the foregoing testimony. Defendant said, "If I talked to [Verl Morris] I guaranteed the well for water supply–I would guarantee him to produce adequate water."

On October 14, 1975, defendant finished drilling and a pump was installed. On that date plaintiffs paid defendant $3,116.79. The record does not show how the amount of that payment was calculated.

Verl Morris testified that for a few days after October 14 the well produced good clear water but then it began to pump sand–"sand and dirt all the time"–and the well was "unusable" after two or three weeks. "The well is just a hole in the ground–you cannot get a thing out of it."

Mrs. Morris testified that after the well was finished the water was all right for a day or so but within a month "if you ran water in the bath tub you had enough sand to make a sand box out of it." Defendant came back once and "raised the pump." After that was done, according to Mrs. Morris, "we did not have any water." Al-

though plaintiffs repeatedly requested defendant to do additional drilling to correct the situation, and defendant made several promises to do so, those promises were not kept.

On this appeal defendant makes no claim that the well met the requirements of the verbal agreement nor does he claim that those requirements were too vague. Defendant's brief concedes that the "well was not producing an adequate supply of water." Defendant argues that the "burden was upon the plaintiffs to show why the well was not producing an adequate supply of water because this goes to the amount of damages they sustained." Defendant also says, "Plaintiffs made no attempt to find out what was wrong with the well and remedy the defect or problem with the well."

When a driller agrees to drill a well on the express understanding that the well will produce a certain quality and quantity of water, he may not recover unless the well which he drills produces water of the quality and quantity agreed upon. *Vincent v. Morrison*, 58 Mo.App. 497 (1894); *Nulton v. Croskey*, 111 Mo.App. 18, 85 S.W. 644 (1905); *T. E. Law & Co. v. Paxton*, 117 Mo.App. 541, 93 S.W. 354 (1906); *American Water Co. v. Bunge*, 213 S.W.2d 93, 98[10] (Tex.Civ.App.1948); *Hurst v. Snider*, 92 So.2d 542 (Ala.App.1957)—"The contract does not admit of part performance any more than does an undertaking to paint a portrait"; *Blackburn v. Texarkana Gas & Electric Co.*, 143 S.W. 588, 592[7] (Ark. 1912); *Borg v. Downing*, 266 N.W. 182, 185[6, 7] (Wisc.1936); *Ylijarvi v. Brockphaler*, 7 N.W.2d 314, 318[5] (Minn.1942); *Sigworth v. Holcomb*, 79 N.W. 864 (Iowa 1899); 17A C.J.S. Contracts § 494[2], p. 717; 90 A.L.R.2d 1346 (Water Well-Drilling Contracts), 1415.

Under the foregoing authorities the well driller is not entitled to compensation for his efforts unless the water production of the well is in accordance with the agreement. Under those circumstances the driller has failed to perform his part of the bargain. If the driller has already been paid, the landowner, in the absence of waiver of the defect, is entitled to a refund of the payment.

The circumstances in *Vincent*, supra, were similar to the instant record. There the defendant, a well driller, agreed to dig a well for plaintiff for $100. The defendant insured an abundant supply of "living or lasting water." Defendant also agreed, in case the well should go dry, to drill it deeper on plaintiff's request at any time. Upon completion of the drilling plaintiffs paid defendant the contract price but "the water gave out" and defendant refused to drill the well any deeper, although repeatedly requested to do so. At plaintiff's request the jury was instructed that if they found that defendant agreed to procure for plaintiff "living or lasting water" and failed to do so, plaintiff was entitled to a refund of the $100 payment together with interest. Defendant contended that plaintiff had accepted the well and that plaintiff's cause of action, if any, was on the breach of the warranty. Defendant also contended that plaintiff's measure of damages was either the difference in value between what plaintiff paid and what plaintiff received or else what it would cost to make the well correspond to the warranty.

In affirming the judgment for the plaintiff, the court of appeals said that there was no evidence that plaintiff accepted the well "as and for the well warranted by" defendant and that at the time the payment was made it was impossible to determine whether the well would "correspond to the warranty or not." The court also said, at p. 501, that the authorities cited by defendant to the effect that plaintiff's recovery should have been limited to what it would cost to make the well correspond with the warranty "can have no application to this case which, from its nature, makes it impossible to furnish such data. How could the plaintiff show that the well, if drilled to any depth, would furnish abundant supply for family and stock use or would not go dry?" The court also said that if defendant had made an improvident contract, he would have to bear the consequences.

Defendant's second point has no merit. The judgment is affirmed.

TITUS and PREWITT, JJ., concur.

GREENE, J., recused.