DORAN, INC., Respondent,

v.

JAMES A. GREEN, JR. & CO., Appellant,

v.

John W. WHITAKER and Michael J. O'Neill, d/b/a O'Neill & Whitaker, Inc., Respondents.

No. WD 33430.

Missouri Court of Appeals, Western District.

May 3, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 28, 1983.

George Murray, III, Charles C. Shafer, Jr., Kansas City, for appellant.

Thomas V. Bender, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, for respondent Doran, Inc.

Robert W. Cotter, Griffin, Dysart, Taylor, Penner & Lay, Kansas City, for respondents Whitaker and O'Neill.

Before SOMERVILLE, C.J., and CLARK and MANFORD, JJ.

PER CURIAM.

Doran, Inc. (Doran) filed suit against James A. Green, Jr. & Co. (Green & Co.) seeking damages for negligent performance of an oral contract for services. Green &

Co., in turn, as third-party plaintiff, filed a third-party petition against two of its former employees seeking judgment "for a pro rata share of any judgment" returned in favor of Doran against Green & Co.

The case was tried to the court, resulting in a judgment for $1,962.45 in favor of Doran and against Green & Co., a directed verdict in favor of third-party defendant John W. Whitaker at the close of all the evidence, and a judgment in favor of third-party defendant Michael J. O'Neill and against third-party plaintiff Green & Co.

Doran, a Missouri corporation, is an importer and distributor of artificial flowers. Green & Co., likewise a Missouri corporation, is a "custom house broker". Doran and Green & Co. *orally* agreed for Green & Co. to handle on Doran's behalf all "customs" and "duty tariff" matters with the United States Customs Service regarding Doran's importation of a shipment of artificial fabric flowers from Taiwan. Oral agreements for similar services had previously been entered into between the parties on a case to case basis.

Green & Co., after performing the oral contract with Doran regarding the shipment of flowers from Taiwan, submitted a statement for services (marked "invoice" in the lower left corner) to Doran in the amount of $2,062.47, of which $1,962.45 represented payment of an import duty on said shipment of artificial fabric flowers on Doran's behalf. Doran timely remitted the sum of $2,062.47 to Green & Co. Thereafter, Doran learned that no duty was owed on said shipment of flowers, and the present litigation ensued.

The president of Green & Co. candidly admitted that no duty was owed on the shipment of flowers in question. With equal candor, he admitted that Green & Co. erroneously paid a duty in the amount of $1,962.45 on the shipment on Doran's behalf, billed the amount thereof to Doran, and that Doran paid the billed amount to Green & Co. The invoice rendered by Green & Co. to Doran contained, on the reverse side thereof in fine print, two provisions which Green & Co. relies on to defeat Doran's claim. The first being that Green & Co.'s liability to a customer for negligence or fault was limited to "$50.00 Per Shipment" and the second being that any claim must be presented to its office within one hundred eighty (180) days from date of shipment by written, sworn statement and any suit thereon must be instituted within six months after presentation of said claim. Doran's chief executive officer testified that he was totally unaware of the two printed provisions contained on the reverse side of the Green & Co. invoice. He further testified that the subjects of the two printed provisions were never discussed or agreed upon as part of the oral contract for services. No contradictory evidence re the oral agreements was offered by Green & Co.

Green & Co. raises two points of error on appeal, each dealing with separate facets of the multiple litigation: (1) the court erred in entering judgment in favor of Doran and against Green & Co. because Doran's cause of action was barred by the "limitation of damages" and "time for presenting claims" provisions contained on the reverse side of the invoice rendered by Green & Co. to Doran; and (2) the court erred in sustaining a directed verdict in favor of third-party defendant Whitaker and entering judgment in favor of third-party defendant O'Neill and against third-party plaintiff Green & Co. because the admittedly erroneous duty paid by Green & Co. and reimbursed by Doran was the result of negligence on the part of Whitaker and O'Neill.

Turning to point (1), it is patent that Doran's claim exceeded the amount set forth in the limitation of damages provision, and it stands undisputed that it was not filed within the time limitation provision, as respectively set forth on the reverse side of the invoice. The fallacy of Green & Co.'s position, however, is that it summarily assumes that the provisions it relies on were contractually binding on Doran. Green & Co.'s first point will be disposed of in this limited context, absent consideration of any ramifications of public policy re clauses limiting damages or § 431.030 RSMo 1978 re

clauses limiting time to institute any suit or action.

Although neither party requested and the trial court made no findings of fact or conclusions of law, an oral observation of record by the trial court at the close of all the evidence reveals that it had its finger on the heart of the problem. In overruling a "motion to dismiss" made by Green & Co. at the close of all the evidence, the trial court stated: "Well, I am going to have to tell you that I think *there is just no agreement as to that $50 and that presentment,* so I am going to have to overrule your motion to dismiss". (Emphasis added).

■ It is fundamental that a person cannot be contractually bound by an instrument to which he has not assented. *Macy v. Day,* 346 S.W.2d 555, 558 (Mo.App.1961) and cases therein cited. Although acceptance without objection of a document which plainly purports to be a contract may give rise to an implication of assent, no such implication arises when the document does not purport to be a contract. *Iowa-Missouri Walnut Co. v. Grahl,* 237 Mo.App. 1093, 170 S.W.2d 437, 440 (1943); *Farm & Auto Supply v. Phoenix Fuel Co.,* 103 Ariz. 344, 442 P.2d 88, 92–93 (banc 1968); and *Tanenbaum Textile Co. v. Schlanger,* 287 N.Y. 400, 40 N.E.2d 225, 226–27, 28 N.Y.S.2d 729, 730–31 (1942).

■ The invoice submitted by Green & Co. to Doran did not purport to be a contract. To the contrary, "[a]n invoice, as such, is no contract ... [a]n invoice is a mere detailed statement of the nature, quantity and the cost or price of the things invoiced". *Tanenbaum v. Schlanger,* supra, 40 N.E.2d at 226, 28 N.Y.S.2d at 730. *Tanenbaum* is a case very much in point. A series of sales were orally agreed upon by both the seller and the buyer. No mention of arbitration was made in the oral agreements. The sales were followed by invoices on which were stamped in red ink "All controversies arising from the sale of these goods are to be settled by arbitration." A controversy subsequently arose out of the transactions, which the seller claimed the parties were contractually bound to submit to arbitration. The Court of Appeals of New York held otherwise, and, their rationale for doing so, approved and adopted by this court, is hereinafter set forth.

"Each of the transactions in question was executed in accordance with an agreement that had been made without mention by either party of the subject of arbitration. It was not until that stage had been reached in each instance that the invoice was made out and stamped with the words 'All controversies arising from the sale of these goods are to be settled by arbitration.' The whole question is thus one of the effect of Schlanger's silence in the face of such separate offers for arbitration, each of which looked back to a single sale and delivery theretofore made.

The applicable principles have been stated by this court in this manner: 'A party cannot be held to contract where there is no assent. Silence operates as an assent, and creates an estoppel, only when it has the effect to mislead. * * * When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings, and misleads another, then his silence may be deemed to be acquiescence. * * * And it may be added that a person is under no obligation to do or say anything concerning a proposition which he does not choose to accept. * * * There must be actual acceptance, or there is no contract.' "

A gamut of arguments relied on by Green & Co. in support of its first point may be laid to rest with dispatch. Green & Co. cites a number of cases as ostensible authority for its position that the provisions relied on to limit or escape liability barred recovery by Doran. The cases relied on are factually distinguishable as they involved contractually binding provisions in written contracts. Hence, they do not constitute persuasive authority in the instant case. Green & Co. also argues that Doran affirmatively pleaded the invoice as "part of the contract" between the parties, thereby making the provisions in question binding on Doran. This argument is unsupported

by the record as Doran's petition referred to the invoice solely as a "statement of services". Green & Co. elusively argues that *it* "never specifically denied the validity" of the invoice "as required" by Rule 55.23. Frankly, this court is unable to perceive or comprehend the thrust or meaning of this argument, and is totally at a loss to give it any meaningful review on appeal. Finally, Green & Co. contends that Doran was bound by the provisions contained in the invoice because the latter was *"admitted into evidence without limitation."* Green & Co. does not undertake to enlighten this court, either by logic or citation of authority, how or why the cryptic contention just mentioned affords any basis for relief. Frankly, this court's own analysis and research have failed to imbue this contention with any legal efficacy.

Everything considered, the trial court did not erroneously declare or apply the law in entering judgment in favor of Doran and against Green & Co. When the judgment is reviewed in conformity with *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), affirmance is unquestionably in order.

Appellant's final point is bifurcated in that it charges the trial court (1) erred in directing a verdict in favor of third-party defendant Whitaker and against third-party plaintiff Green & Co. at the close of third-party plaintiff Green & Co.'s evidence and (2) erred in rendering judgment in favor of third-party defendant O'Neill and against third-party plaintiff Green & Co. on this third-party claim.

■ Attention initially focuses on the first prong of the bifurcated point outlined above. Green & Co. contends that the trial court erred in directing a verdict in favor of Whitaker because there was "substantial evidence" that Whitaker was "individually liable for the erroneous rating that resulted in the improper duty paid by Doran". Appellate review of whether the trial court erred in directing a verdict in favor of Whitaker also falls under the mandate of *Murphy v. Carron,* supra, as a motion for a directed verdict in a court tried case, albeit an anomaly, is treated as submitting the

issues upon the merits. See *Brassfield v. Allwood,* 557 S.W.2d 674, 677–78 (Mo.App. 1977). After carefully seining the record, one irrefutable truth stands out—rank speculation aside, there is not so much as a scintilla of evidence, much less any "substantial evidence", that Whitaker, by commission or omission, caused or contributed to the erroneous rating which resulted in the improper duty paid by Doran. The record conclusively demonstrates the trial court was eminently correct in directing a verdict at the close of third-party plaintiff Green & Co.'s evidence in favor of Whitaker and against Green & Co. on the latter's third-party claim.

■ The final point of Green & Co.'s bifurcated point levels error at the trial court for entering judgment in favor of O'Neill and against Green & Co. on the latter's third-party claim. The record discloses substantial evidence, albeit in some instances challenged by conflicting evidence introduced by Green & Co., to support the verdict rendered by the trial court in favor of O'Neill and against Green & Co. on its third-party claim. Under these circumstances, this court defers to the trial court's assessment of the credibility of the witnesses, *Morris v. Perkins,* 603 S.W.2d 711, 713 (Mo.App.1980), and, in compliance with the mandate of *Murphy v. Carron,* supra, sustains the judgment of the trial court as there is substantial evidence to support it, it is not against the weight of the evidence, and it does not erroneously declare or apply the law.

■ Whitaker and O'Neill, pursuant to Rule 84.19, have each filed motions for assessment of damages against Green & Co. for frivolous appeals. Assessment of damages for frivolous appeal is designed to serve a two-fold purpose—to prevent appellate dockets from being cluttered with unmeritorious appeals at the cost of delaying those which are meritorious, and to compensate respondents for costs attendant to responding to unmeritorious appeals. *Woodley-Griggs Boiler Repair v. Sanders,* 626 S.W.2d 410, 413 (Mo.App.1981). Issues presented on appeal "must be at least fairly

debatable" in order to avoid assessment of damages for frivolous appeals. *Id.* Due to conflicts in the evidence, and out of a carefully guarded sense of assuring that Rule 84.19 is employed to correct abuses rather than becoming abusive and intimidating, O'Neill's motion for assessment of damages and frivolous appeal is denied. Whitaker's motion, however, is a different matter. There was not one iota of evidence to support, much less sustain, Green & Co.'s third-party petition against Whitaker. Green & Co., in response to Whitaker's motion for assessment of damages, attempted to justify the appeal taken against Whitaker by the following explication. Whitaker and O'Neill, after leaving the employment of Green & Co., formed a corporation, to-wit, O'Neill and Whitaker, Inc., to engage in the same business as Green & Co. Although O'Neill and Whitaker were sued as individuals by Green & Co. in its third-party petition, the following statement is made and relied upon by Green & Co. to justify its appeal against Whitaker: "Realistically, an individual judgment against Respondent O'Neill would have the same effect upon Respondent Whitaker and vice versa. The business enterprise assets of O'Neill and Whitaker, Inc., whether a corporation or partnership, could be subject to execution to the extent of the particular individual Respondent's involvement in the business. For the above reasons, the Appellant treated the acts and proposed liabilities of Respondents Whitaker and O'Neill under the same Argument II. To Appellant's attorney, the Respondents Whitaker and O'Neill appeared as *one* due to the fact that they both were former officers who participated in the Doran entry." Under the most charitable view, the foregoing fails to demonstrate that the issues on appeal as to Whitaker "were fairly debatable". The issues on appeal and Green & Co.'s attempted justification are so devoid of merit that this court would have to totally emasculate Rule 84.19 in order to deny Whitaker's motion for damages for frivolous appeal. Perforce, Whitaker's motion for assessment of damages against Green & Co. is sustained. This court, pursuant to Rule 84.19, hereby assess-

es damages in favor of John W. Whitaker and against James A. Green, Jr. & Co. in the amount of One Thousand Five Hundred and no/100 Dollars ($1,500.00).

The judgment below is affirmed in all respects. However, this case is remanded to the trial court with directions to enter judgment in favor of John W. Whitaker and against James A. Green, Jr. & Co. in the amount of One Thousand Five Hundred and no/100 Dollars ($1,500.00) as and for damages for frivolous appeal.