**Jurldean WIELAND, et al.,**
**Plaintiffs–Appellants,**

v.

**TICOR TITLE INSURANCE COMPANY,**
**Defendant–Respondent.**

**No. 53544.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 30, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 1988.

Application to Transfer Denied
Sept. 13, 1988.

Thomas G. Brackman, Clayton, for plaintiffs-appellants.

Robert E. Jones, Robert C. Jones Jr., William Laird Hetlage, Clayton, for defendant-respondent.

KELLY, Judge.

Jurldean Wieland and Boatmen's National Bank of St. Louis appeal from a judgment of the Circuit Court of St. Louis County in favor of respondent Ticor Title Insurance Company.

We reverse the judgment of the trial court amd remand to the Circuit Court with directions.

Jurldean Wieland and the Boatmen's National Bank of St. Louis are the co-personal representatives of the estate of William A. Wieland and were substituted as party plaintiffs in this action subsequent to the death of the original plaintiff William A. Wieland on November 24, 1985.

William A. Wieland (hereinafter referred to as Wieland) was the developer of a subdivision known as Barrington Woods located in St. Louis County, Missouri. Wieland was involved in negotiations to purchase approximately 2.7 acres of property from an adjoining land owner, Ed Rolwes, who

was also the developer of a neighboring subdivision called Santa Maria.

During this period of negotiations, many property owners in the area, including Rolwes and Wieland, had been negotiating to build a sanitary sewer line, sewage line and sewage treatment plant to be known as the Smizer Mill Trunk Sewer project. For this project, the parties agreed to hire Jay Mueller to be both the engineer and the general contractor.

Prior to July 31, 1981, Wieland had paid more than $55,000 to begin construction on the sewer line. On or about July 31, 1981, Mueller accompanied Wieland to Pioneer Title Co. (now Ticor Title Insurance Company). Wieland executed a check in the amount of Forty Thousand Two Hundred Ninety Dollars ($40,290.00) payable to Pioneer. Mueller witnessed Wieland hand the check to Marvin Kosky, Pioneer Title's Assistant Vice President. The back of the check contained the words "Payment in full for purchase of 2.7 acres more or less from Edward Rowles [sic] and Co. ground adjoining Barrington Woods." Kosky accepted the check, and on behalf of Pioneer, gave Wieland a signed receipt made up of two photocopied pages, which comprised copies of both the front and back of the check, including the endorsement language regarding purchase of the 2.7 acres from Rolwes and Co.

On or about August 3, 1981, Wieland received a letter from Mueller indicating that the $40,290.00 check from Wieland was Rolwes' contribution to the sewer project from the proceeds of the sale of 2.7 acres of land to Wieland. Mueller testified at trial that he expected that the 2.7 acres would be transferred.

On August 6, 1981, Kosky entered into an escrow agreement with Mueller to disburse funds from an escrow account to pay subcontractors for the continued construction of the Smizer Mill Trunk Sewer project. That agreement did not mention Wieland nor did it identify the money that was to be deposited into the account. Wieland's check was then deposited into this account. Shortly thereafter, several landowners deposited funds into the Smizer

Mill escrow account. The funds, including Wieland's $40,290.00, were then disbursed to pay subcontractors for the construction of the Smizer Mill Trunk Sewer project.

The sewer project was ultimately abandoned, and Rolwes never conveyed the 2.7 acres of land to Wieland. There was no agreement or written contract between Pioneer and Wieland concerning Wieland's contribution to the Smizer Mill Trunk Sewer project.

Appellants filed suit claiming that respondent's use of the $40,290.00 was not in accordance with the restrictive endorsement on the back of the check and the receipt. They argued that respondent was contractually obligated to hold the funds pending the transfer of deeds from Rolwes to Wieland.

Respondent argued that it was not obligated to secure the conveyance of the 2.7 acres from Ed Rolwes and Company to Wieland. They further argued that Wieland's contribution was for the benefit of property owned by Wieland and other landowners, and that respondent properly disbursed the funds pursuant to the construction and disbursing escrow agreement entered into by respondent and Mueller.

In a court-tried case, the court rendered a judgment in favor of respondent.

Appellant argues two points on appeal, the first of which is comprised of three subpoints. Appellant initially contends the trial court erred by ruling that there was no contract between Wieland and respondent obligating respondent to secure the purchase of the 2.7 acres from Rolwes.

■ In a court-tried case, the judgment of the trial court will be sustained by the appellate court, unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ The trial court found, inter alia, that "the Forty Thousand Two Hundred and Ninety Dollars ($40,290.00) check was de-

posited with Pioneer by W.A. Wieland to be used for Smizer Mill Trunk Sewer, and not in escrow for Pioneer to deliver to any other party. (testimony of Jay Mueller and Marvin Kosky)." The court further found that "there was no contract between Plaintiffs' decedent and Defendant, that Defendant, or its predecessor, would secure the conveyance of the 2.7 acres from Edward Rolwes and Company to Plaintiffs' decedent, or itself convey said acreage to Plaintiffs' decedent." We find that the trial court's finding that respondent did not undertake a contractual relationship to act as an agent for Wieland to secure the conveyance of 2.7 acres from Rolwes is not supported by substantial evidence.

The evidence before the trial court included the check executed by Wieland in the amount of $40,290.00 payable to respondent. Mueller witnessed Wieland hand the check to Kosky, Pioneer Title's Assistant Vice–President. Both Kosky and Mueller testified at trial. Mueller indicated that at the time Wieland delivered his check to respondent, there had been a discussion between Wieland and Kosky regarding the sale of property from Rolwes to Wieland, and the use of the funds as Rolwes' sewer contribution. Kosky, on behalf of Pioneer Title, accepted Wieland's check and issued Wieland a receipt signed by Kosky. Kosky personally prepared the receipt by copying both the front and back of the check which included the words, "Payment in full for purchase of 2.7 acres more or less from Edward Rolwes and Company ground adjoining Barrington Woods."

Kosky testified that even though he had personally signed and issued Wieland a receipt, he did not see the restrictive endorsement and that he had no knowledge of the proposed sale of the 2.7 acres.

■ "A party in an armslength transaction is charged with the obligation of reading what he signs and, in the absence of a showing of trickery or artifice, he cannot avoid the consequences of the instrument he signs on the ground that he did not know what he was signing." *Taylor &* *Martin, Inc. v. Hiland Dairy, Inc.,* 676 S.W.2d 859, 871–872[14] (Mo.App.1984).

In the instant case, Kosky is charged with the obligation of reading what he signs. He cannot avoid the consequences of the signed receipt on the ground that he was unaware of the restrictive endorsement on the back of the check.

We need not address the sub-issue whether the trial court, pursuant to the parol evidence rule, abused its discretion by allowing the testimony of Kosky which directly contradicted the written language on the check and on the receipt issued to Wieland. The admission of Kosky's testimony did not prejudice appellant in light of our determination that even though Kosky testified that he was unaware of the restrictive endorsement on the back of the check he is still charged with the obligation of knowing what he was signing.

We next must decide whether the check executed by Wieland with the restrictive endorsement, the acceptance and subsequent deposit of the check by respondent, together with the issuance of a signed receipt constitutes a contract, authorized respondent to act as an agent to secure the purchase of the 2.7 acres.

■ The essential elements of a contract are that the parties are competent to contract, there is a subject matter, legal consideration, a mutuality of agreement and a mutuality of obligation. *State ex rel. St. Louis Car Co. v. Hughes,* 348 Mo. 125, 152 S.W.2d 193, 198[6] (1941). Here, the parties are competent to contract, the subject matter is the 2.7 acres adjoining Barrington Woods, the legal consideration is respondent's 2% fee of the entire amount deposited. Wieland's entrusting the check to respondent can be construed as an offer and respondent's subsequent cashing of the check and issuance of a signed receipt to Wieland amounted to an acceptance.

Respondents rely on *Iowa–Missouri Walnut Company v. Grahl,* 170 S.W.2d 437 (Mo.App.1943) to support its contention that the restrictive language on the check did not constitute a contract.

In *Iowa–Missouri Walnut Company,* plaintiff corporation sued Carl Grahl, defendant, for alleged breach of contract. Defendant filed a general denial and counterclaim. Verdict and judgment were for defendant on his counterclaim and against plaintiff on its petition. Appellant offered into evidence a written agreement that included the language:

> At Sight Pay to the order of Carl B. Grahl $300.00 Three hundred and 00/100 dollars.
>
> *For all walnut trees* located on Joe Carden Farm 2½ Southeast of Quitman, Mo. (emphasis added).

*Iowa–Missouri Walnut Company,* 170 S.W.2d at 438.

Defendant claimed that he entered into a verbal contract with plaintiff for the sale of 70 trees for the sum of $300.00. Plaintiff argued that he entered into a verbal contract with defendant for the sale of 120 trees for the sum of $300.00. The court allowed testimony to determine the quantity of trees that were agreed upon by the parties.

Respondent directs us to the following language of the court:

> An offeree is not bound by the *unknown terms* of a document by his acceptance of the same without objection, where the document delivered to him purports to be, and would by a reasonable man be understood to be, merely a check or voucher, and not a contract, as in the case of a baggage receipt or check, an ordinary railroad ticket, and other receipts or papers of similar character. See also 17 C.J.S., Contracts, § 41, Subsec. G, page 377. (emphasis added).

*Iowa–Missouri Walnut Company,* 170 S.W.2d at 440 [4].

The court went on to say:

> The rule requiring a party who signs a contract to read it and holding him bound by its provisions is not a 'rule of thumb' but one of equity and sense. 17 C.J.S., Contracts, § 137, page 490. It does not apply where the contract is ambiguous and requires explanation. 17 C.J.S., Contracts, § 137, p. 490. See also *Lefebvre v. Nickolai,* 205 Wis. 115, 236 N.W. 684.

Application of the above law to the facts in the case at bar requires us to hold that defendant was not bound by words written on the face of a *check* by affixing his signature, as an endorsement, on the reverse side thereof, where, as here, there is evidence which tends to prove that the words written on the face of the check were not called to his attention at the time and he did not learn of them prior to his signature, and where there is convincing evidence tending to prove that such words do not express the contract agreed on by the parties. Under the circumstances here shown it was proper to receive parol evidence for the purpose of explaining the instrument and establishing the true terms of the contract agreed upon by the parties.

*Iowa–Missouri Walnut Company,* 170 S.W.2d at 440 [5–7].

It is clear that the language, "For all walnut trees located on Joe Carden Farm 2½ Southeast of Quitman, Mo." is ambiguous and requires explanation.

The instant case is distinguishable from *Iowa–Missouriu Walnut Co.,* in that here the restrictive endorsement clearly stated that the check was to be used to purchase 2.7 acres of property from Rolwes. The restrictive endorsement on the back of the check was an accurate expression of the agreement the parties reached in prior oral negotiations. No one disputed the fact that Rolwes had intended to convey 2.7 acres to Wieland. Kosky accepted Wieland's check for the purpose of purchasing 2.7 acres from Rolwes, copied both the front and back of the check, signed the copy, issued a receipt to Wieland, and subsequently cashed the check without cancelling or altering the restrictive endorsement. We find that the trial court erred by ruling that there was no contract between Wieland and respondent obligating respondent to secure the purchase of the 2.7 acres from Rolwes.

We also find that the trial court's finding that "Even if the payment to Pioneer was payment in full for the conveyance of the property mentioned on the back of said check, the obligation to convey was solely

that of Edward Rolwes and Company and the payment to Pioneer was to be used for Smizer Mill Trunk Sewer Company, and the only cause of action that Plaintiffs have, or their decedent had, was against Edward Rolwes and Company" is not supported by substantial evidence.

The restrictive endorsement on the check and the signed receipt constituted a contract, which created an agency relationship between Wieland as principal and Pioneer Title as agent.

 The relationship of principal and agent and resultant liability of the principal for the acts of the agent may be created by the express grant of authority by the principal or, absent express agency, the relation may be one of implied or inferred agency or apparent agency, *Shelby v. Slepekis*, 687 S.W.2d 231, 234[1] (Mo.App. 1985). The evidence in this case did show respondent to be the agent of Wieland, because the check was to be delivered upon the action of the third party Rolwes.

The relation of principal and agent is that legal relationship which exists where one person is authorized, usually by the act of the parties, to represent and act for another, in the contractual dealings of the latter with third persons. *Prior v. Hager*, 440 S.W.2d 167, 173 [3] (Mo.App. 1969). The agent has no authority to bind the principal beyond the limits of the authority conferred upon him. *See Martin v. Hieken*, 340 S.W.2d 161, 165 [1] (Mo.App. 1960).

Here, Rolwes never transferred the property to Wieland pursuant to the instructions delineated in the endorsement and receipt. Pioneer Title acted beyond its authority by disbursing Wieland's funds into the Smizer Mill Sewer project, and Pioneer Title breached its fiduciary duty to Wieland, thereby remaining obligated to Wieland for the amount of the check.

We conclude that the endorsement on the check and the signed receipt created a contract between Wieland and Pioneer Title. The contract obligated Pioneer Title, as agent for Wieland, to secure the conveyance of the 2.7 acres from Rolwes. Kosky,

a representative of Pioneer Title, is charged with the obligation of reading the receipt which he signed and issued to Wieland. Accordingly, pursuant to Wieland's instructions delineated in the endorsement, Pioneer Title was contractually obligated to hold the funds pending the transfer of deed from Rolwes to Wieland.

In light of the foregoing, we need not address appellant's second contention that the trial court erred by finding that Wieland received a legal benefit from the use of the $40,290.00 which Pioneer Title disbursed from the Smizer Mill Sewer escrow account.

Additionally, respondent's motion to dismiss pursuant to Rules 84.04 and 84.08, and for failure to state any grounds for reversal of the trial court's ruling, is denied.

The judgment of the trial court is reversed and the cause is remanded to the Circuit Court to enter judgment for the plaintiffs.

KAROHL, P.J., and SMITH, J., concur.