INDUSTRY FINANCIAL CORPORA-TION, Plaintiff–Appellant,

v.

OZARK COMMUNITY MENTAL HEALTH CENTER, INC., Defendant–Third Party Plaintiff–Respondent,

v.

Henry DOSS, Dewayne Melton, A.B. Dick Products Co. of Joplin, Inc., Doss and Price Office Systems, Inc., Third Party Defendants.

OZARK COMMUNITY MENTAL HEALTH CENTER, Plaintiff–Appellant,

v.

SOUTHWEST OFFICE SYSTEMS, INC., Dewayne Melton, Defendants–Respondents,

Doss and Price Office Systems, Inc., Defendant–Third Party Plaintiff–Respondent.

Henry DOSS, Defendant–Third Party Plaintiff–Respondent,

v.

SOUTHWEST OFFICE SYSTEMS, INC., A.B. Dick Products Co. of Joplin, Inc., Defendants–Respondents.

Nos. 16046 and 16048.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 13, 1989.

William J. Fleischaker, Roberts, Fleischaker & Williams, Joplin, for plaintiff-appellant Industry Financial Corp.

Ronald E. Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for plaintiff-appellant Ozark Center.

Jerry A. Harmison, Jr., Miller & Sanford, Springfield, for defendant-respondent Henry Doss.

Jerry E. Wells, Joplin, for defendant-respondent Doss & Price Office Systems Inc.

PREWITT, Judge.

Industry Financial Corp. (Industry) filed suit against Ozark Community Mental Health Center, Inc. (Ozark) seeking the balance due on a lease. Following nonjury trial a judgment was entered which denied plaintiff recovery. In that same action, Ozark filed a third party petition against Henry Doss, DeWayne Melton, A.B. Dick Products Company of Joplin, Inc. and Doss & Price Office Systems, Inc. The judgment denied Ozark recovery on the third party petition.

Judgment was also entered against Ozark in its separate lawsuit against Southwest Office Systems, Inc., DeWayne Melton, Henry Doss and Doss & Price Office Systems, Inc. Ozark sought to receive judgment against them should it be liable to Industry. The cases were consolidated for trial and have been consolidated here. Industry and Ozark appeal.

"In a court-tried case, the judgment of the trial court will be sustained by the appellate court, unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Wieland v.*

*Ticor Title Insurance Co.,* 755 S.W.2d 659, 661 (Mo.App.1988).

We first discuss Industry's appeal. It states in its point relied on that the judgment was against the weight of the evidence because Industry's "uncontroverted evidence" and Ozark's evidence and admissions established that it was obligated to Industry under the lease. This point is well taken.

There were no material facts in dispute between Industry and Ozark. By "Lease" dated April 23, 1979, Ozark leased from Third Century, Inc. a Sharp copying machine and sorter. The parties agree that this lease was actually a financing tool. The copying equipment was purchased from Four State Copy Supply, Inc. (Four State). In May of 1979, Third Century, Inc. assigned the lease to Industry. On May 25, 1979, Industry notified Ozark of the assignment and requested that all future payments should be made to it.

Ozark was to make 60 monthly payments of $278.05 under the lease. It made 17 payments, totaling $4726.85. In October of 1980, the month that Ozark made its last payment, it discussed with employees of Four State the purchase of a new copier. Ozark and Four State agreed that the initial copier would be traded in and a new copier purchased. The initial copier was not sufficient for the volume of copying work done by Ozark.

After taking bids Ozark decided to finance the new purchase through Executive Financial Services, Inc. Thereupon, at the direction of an employee of Four State, Ozark requested that Executive Financial Services issue a check for $15,909.28 payable to Four State. It sent such a check to Four State on December 3, 1980. Ozark and Four State had agreed that the amount due Industry was to be paid by Four State from the proceeds it received from Executive Financial Services, Inc. Four State took possession of the Sharp copier and delivered a new copier to Ozark. The Sharp copier has not been located since by the parties.

On December 11, 1980, an employee of Ozark contacted Industry and was told that the balance due on the lease was $9,300.45 and relayed that information to Four State. On January 20, 1981, Ozark received from Four State a copy of a letter dated that day signed by "Henry E. Doss, President", on Four State's letterhead to "Industrial Leasing, Inc." at Industry's address stating "[p]lease find enclosed a check in the amount of $9,300.45 for the payoff on Ozark Mental Health lease."[1] Doss acknowledged in his testimony that the letter was never sent nor the payment made. How the copy of the letter got to Ozark is not clear.

Doss testified that when he found out the money was owed to Industry he ordered the check to be written. There were disputes between Melton and Doss about this time. Apparently they were the only shareholders in Four State. Melton had received a temporary restraining order against Doss due to management disagreements and an agreement was being worked out between the parties regarding Four State. There was testimony that Melton was to sign and send a check to Industry for $9,300.45 to pay off the lease, but because Four State's bank account was overdrawn, refused to do so. Apparently Melton's signature was required on checks of Four State in January of 1981.

By agreement between Doss, Melton and Four State dated December 4, 1980, and consummated on January 23 or 28, 1981, Doss acquired, for a corporation he was to form, certain assets of Four State. Apparently he acquired all of Four State's assets except for accounts receivable, Royal copying equipment and other Royal materials. The value of the property acquired by him and its ratio to the property retained by Four State is not in the record. The corporation or Doss also received the right to use the name "Four State Copy Supply". On February 2, 1981, Four State changed its name to Southwest Office Systems,

---

1. Two entities identified in the record as "Industry Capital" and "Industry Leasing" had merged to become Industry Financial Corporation. The parties treat the letter as addressed to Industry.

Inc.[2] The corporation formerly known as Four State Copy Supply, Inc. with its name changed to Southwest Office Systems, Inc. apparently operated until its corporate charter was forfeited on January 1, 1982. Doss & Price Office Systems, Inc. was formed by Henry Doss to receive the assets obtained from Four State pursuant to the agreement.

At the conclusion of the trial held on November 2, 1987, the trial judge stated that "Ozark owes Industry Financial, no question about it." However, in the judgment entered October 13, 1988, the court states that "plaintiff Industrial Financial Corporation fails to sustain the burden of proof that defendant Ozark is indebted on the lease agreement" and entered judgment against Industry on its petition.

Ozark states four bases in its brief on Industry's appeal why the judgment should be affirmed. It states in its first point that *Industry did not sustain its burden of proof* because it failed to present adequate evidence that Ozark was put in possession of the equipment that it was entitled to receive under the lease agreement and that Industrial complied with the "repurchase agreement".

■ Undisputedly Ozark had the equipment from April of 1979 until December of 1980. They selected it, wished to purchase it and use it, and did so. The lease was merely a financing instrument. Before Four State took the copier Ozark admitted that it owed the balance of the lease agreement and had an agreement that Four State would pay that balance. Ozark did not contend at trial that it did not get the equipment it intended to receive under the lease and the evidence established that it did.

■ Ozark also contended in its first point that Industry had not shown that it "complied with the repurchase agreement." Ozark's brief states that "Industry Financial, as successor to Third Century, had a repurchase agreement with Four State.

(T. 57)." At that page reference the transcript reflects testimony that Third Century Leasing had a repurchase agreement with Four State but neither there nor anywhere else in the record is there any indication that Industry was in any manner obligated under it. Nor is it explained how that agreement, if it existed, could be relied on by a nonparty to it.

■ The remaining two contentions of Ozark that the judgment was correct are premised on the contention that Four State was the agent of Industry. Ozark claims in its second point that Four State, as Industry's agent, received payment in full. In its third point Ozark states that Four State, as Industry's agent, failed to exercise reasonable care over the equipment and to dispose of it in a commercial and reasonable manner after assuming possession. As the evidence was insufficient to establish agency these contentions fail.

Earl Reed, the accountant for Ozark, who handled the transaction for it, testified that in connection with the surrender of the first copier to Four State, and the purchase of the second, he dealt exclusively with employees of Four State. The initial copier was surrendered and payment made to Four State before Industry was informed of the transaction. When Reed·requested that the payoff figure be sent to Four State, he was informed that Industry would send an invoice for that amount to Ozark who could then relay it to Four State.

It is required that the principal, in this case Industry, not the agent, here allegedly Four State, create the appearance of authority to the third person, Ozark. "Apparent authority results only from the acts of the principal, not from any acts of the agent." *Henry v. Cervantes–Diversified and Associates,* 700 S.W.2d 89, 92 (Mo. App.1985). It is when the principal "holds out" another as having certain authority, thereby inducing others to believe that au-

---

**2.** Southwest Office Systems, Inc. was a party to Ozark's claim but prior to trial its corporate charter was revoked. The record does not explain what happened to any assets Southwest

Office Systems, Inc. might have had when the charter was revoked or who its directors were at that time.

thority exists, that creates responsibility on behalf of the alleged principal. See *Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 846–847 (Mo.App.1986).

Industry, or its predecessors in interest, financed the purchase of the initial copier from Four State to Ozark. There was no evidence that Industry held out in any manner that Four State was its agent to receive payment or the copying equipment. Ozark was obviously well aware of this as it had an agreement that Four State was to pay Industry so that Ozark would not be further obligated on the "lease" and Four State could obtain ownership of the copying equipment.

As we find that the portion of the judgment regarding Industry's claim against Ozark was against the weight of the evidence this court is directed to "give such judgment as the court ought to give" and "[u]nless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14.

The judgment on Industry's claim is reversed and the cause remanded. The trial court is to enter judgment in favor of Industry and against Ozark in the amount of $9,300.45 with interest at the rate of nine percent per annum from January 9, 1981.[3]

Industry also sought, as the lease provided, its attorney fees. Such fees generally are allowed when authorized by contract. *Cimasi v. City of Fenton*, 659 S.W.2d 532, 537 (Mo.App.1983). There was no evidence regarding the amount of attorney fees but that would not prevent the trial court from allowing them.

In the absence of a contrary showing, the trial court is presumed to know the character of attorney services rendered and their value. *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980). The trial court is considered an expert on the question of attorney fees and as it tried the case, and presumably is acquainted with all the issues involved, may set those fees without the aid of evidence. *Id.* Upon remand the trial court can determine said

fees and take such additional evidence regarding them as it deems proper.

After determining that Ozark was not liable to Industry the trial court apparently decided that there was no need to consider the claims of Ozark seeking to be reimbursed should it be liable to Industry. The trial court appears not to have made a decision on the merits of those claims. It would not be in the interest of justice for this court to determine the judgment that should have been made on those issues and finally dispose of them as there were conflicts in the evidence and credibility is difficult to determine from this record. Therefore, we have decided that the proper procedure is to reverse the judgments rendered and remand to the trial court and it is so ordered. The trial court is to enter judgment in favor of Industry as above described and proceed to make a determination upon Ozark's claims. In the discretion of the trial court additional evidence may be heard.

FLANIGAN, P.J., and MAUS, J., concur.

---

**3.** Industry contends that it was entitled to nine percent per annum from that date, see

§ 408.020, RSMo 1986, and that does not appear to be contested.