Gay CARRAWAY, Plaintiff-Respondent,

v.

Homer E. SAYAD, et al.,
Defendants-Appellants.

No. 50960.

Missouri Court of Appeals,

Eastern District,
Division Three.

Sept. 30, 1986.

David O. Danis, St. Louis, for defendants-appellants.

Robert J. Koster, St. Louis, for plaintiff-respondent.

CRANDALL, Judge.

Captain Gay Carraway (Carraway) was found guilty by the Board of Police Commissioners of the City of St. Louis (Board) of violating certain regulations and special orders of the St. Louis Metropolitan Police Department. After a hearing, the Board assessed punishment at a written reprimand. On appeal to the Circuit Court, the court reversed. The Board appeals. We affirm the judgment of the Circuit Court reversing the Board's decision.

The scope of judicial review for an administrative agency decision is limited to a determination of whether or not the order is supported by competent and substantial evidence based upon the whole record. *Moran v. Whaley*, 608 S.W.2d 446, 447 (Mo.App.1980). The evidence must be viewed in the light most favorable to the decision of the Board. *Miller v. Whaley*, 581 S.W.2d 916, 917 (Mo.App.1979). Neither this court nor the Circuit Court may substitute its judgment for that of the administrative board. *McNeal v. Bequette*, 571 S.W.2d 657, 658 (Mo.App.1978).

We must determine, however, if the Board's findings and conclusions are reasonable in light of all the evidence presented. *Moran*, 608 S.W.2d at 448. If they are clearly contrary to the overwhelming weight of the evidence, it is our duty to reverse the Board's decision. *Id.*

At the time the charges were brought against him, Carraway had been a police officer for twenty-seven years. He was a captain and commander of the Seventh District Police Station, St. Louis Metropolitan Police Department (Department), at all times pertinent to the charges; namely, from January 1, 1978 to November 19, 1982. Four charges were filed against him, alleging that he violated certain provisions of the police manual and special orders issued by the Chief of Police. The charges arose out of Carraway's alleged mismanagement of the station's Flower Fund. The Flower Fund consisted almost exclusively of proceeds from vending machines which were located in the station house. The investigation against Carraway was prompted when a shortage was discovered in the Flower Fund.

An evidentiary hearing was held before the Board. The evidence adduced at the hearing established that, during Carraway's command, the Seventh District was the only district in the City of St. Louis involved in an experimental program known as "team policing." The three goals of team policing were to increase job satisfaction for the police officers, to enhance police services to the community, and to improve police relations with the community. A special task force met once a week to implement these goals. Carraway was a member of this task force and attended the weekly meetings. The task force gave Carraway a great deal of latitude and encouraged him to be creative in furthering the proposed goals of team policing. Although there existed a special order limiting the uses of the vending machine proceeds,[1] the task force expanded the uses

---

1. Special Order 80–S–29 provides in pertinent part:

    I. USE OF VENDING MACHINE REVENUE
    Revenue derived from vending machines by the districts of this Department is to be utilized for the purchase of soft drinks (e.g., coffee, tea, hot chocolate, etc.), cream, sugar, related supplies, to restock approved vending machines, floral funds, retirement affairs, "Officer of the Month" awards, Christmas luncheons, platoon picnics, recreational supplies where recreational facilities exist.

    These funds are for the benefit of all members assigned to a district ... and are to be used only for the members within the district. The exception shall be for the purchase of flowers when a relative of a member dies. Without the express approval of the Chief of Police, these funds shall not to be used for purposes other than those outlined herein.
    III. CONTROL OF VENDING MACHINE REVENUE
    \*    \*    \*    \*    \*    \*
    Each district is to establish a record of receipts and disbursements. These records are

for the money. In general, the Seventh District was granted "exceptions" from the strict requirements imposed upon the other districts.

Carraway did not himself keep the records for the Flower Fund. His administrative aide, also a police officer, actually kept the books. Neither the aide nor Carraway had been given instructions on how to properly record transactions in the Flower Fund. Carraway made all the officers in the district aware of any unusual expenditure and solicited their approval. He also signed the Flower Fund quarterly reports prepared by his aide.

The record indicates that the Seventh District had more money than any other district in its Flower Fund. In addition to a checking account with as much as $1600 in it, large amounts of cash were kept in the station house. For each quarterly report, Carraway's aide balanced the checkbook but did not reconcile the cash on hand with the amount shown on the ledgers. This procedure was followed from January, 1978 until July, 1982. In July, when the aide was preparing the quarterly report, he noticed that the cash on hand did not appear to correspond to the amount listed on the report. He counted the cash and discovered that a discrepancy of $1125 existed. When he told Carraway about the shortage, Carraway was confident that it was just a mathematical error and suggested that the books be reconciled by a Mrs. Barbara Brown, the bookkeeper at a neighboring church. Carraway signed the quarterly report for July, 1982, which did not reflect the $1125 shortage. By the time the October, 1982 report was due, Mrs. Brown had not located the error. The October report was submitted, again without indicating the shortage. In November, 1982, Carraway was transferred to another district. When the commander who replaced him became aware of the shortage in the Flower Fund, he retrieved the books

from Mrs. Brown and notified the Chief's office of the missing funds.

An internal audit of the Flower Fund records from January 1, 1978 to November 19, 1982 revealed that the shortage was actually $1547. The audit disclosed that, although the ledgers were kept in a reasonable fashion on their face, numerous receipts and disbursements had never been recorded. All police officers in the Seventh District were allowed to get cash advances from the fund in return for written I.O.U.'s which they repaid on the following payday. These I.O.U.'s were not recorded and were not carried over into the next month; they were destroyed upon repayment. Carraway also made donations to the neighboring high school's yearbook fund, to the United Fund Drive, to the policemen's vest fund, to a fund for sickle cell anemia, and to various police officer memorial funds. He bought tickets for police benefit games and distributed them to children in the district. He purchased numerous office supplies, paid for seminars for his officers, bought lunch for a group of foreign visitors, and bought Christmas gifts for civilian personnel in the station house. He gave money for the district's annual police-community cookout, for Christmas baskets for the needy of the district, and for the repair of a wheelchair for a retired police officer. He also donated liquor for a police chiefs' convention held in St. Louis.

When questioned about these expenditures at the hearing, Carraway said that not only had they been authorized by the task force for team policing, but that they had never been challenged on his quarterly reports. He felt that the disbursements complied with the Department's special order pertaining to vending machine revenue because they were made "for the benefit of all members assigned to a district, and [were] used only for members within the district." He stated that such unorthodox

to be maintained at all times in readiness for an audit by the responsible unit of the Bureau of Inspections.

\*     \*     \*     \*     \*     \*

The Chief of Field Operations is responsible for reviewing these quarterly reports [of receipts and disbursements] to insure that established guidelines are being complied with properly.

uses of the Flower Fund furthered the goals of team policing by improving community relations and by promoting job satisfaction within the district. He also said that he did not report the discrepancy immediately to his superiors because he was confident that the mistake was merely a mathematical error. He stated that he was unaware that the Department had its own auditing unit available for his use.

Charges and specifications alleging violations of the rules and regulations of the Department were filed and a disciplinary hearing held. Carraway was found guilty of violating Rule 3, Section 3.102 of the Police Manual[2] in that he did not perform his job as district commander properly by failing to comply with the special order pertaining to the use of vending machine proceeds. Under Charge IV, Carraway was found to be in violation of Rule 9, Section 9.001(r) of the Police Manual[3] in that he neglected his duty as a district commander by giving the Flower Fund ledgers to a person outside of the Department for auditing when the Department had its own unit capable of conducting an audit. The Board ordered that a written reprimand be issued and placed in Carraway's personnel file. On appeal to the Circuit Court, the court reversed the Board's order.

The Board raises two points on appeal. The first point questions the trial court's finding that the Board's decision was not supported by substantial and competent evidence. The second challenges the trial court's determination that the rules which Carraway violated were unconstitutionally vague. The facts are not in dispute. The parties disagree over the application of the rules to the facts. In essence, the appeal focuses on two issues: (1) whether the evidence justified a finding that Carraway violated the Department's rules and regulations by spending the vending machine revenue inappropriately or by giving the Flower Fund's ledgers to a bookkeeper outside of the Department; and (2) whether Carraway was properly put on notice that such acts constituted violations of the Department's rules and regulations.

■ We first consider the issue of whether there was substantial evidence to support the Board's decision that Carraway improperly spent the proceeds from the vending machines. Carraway was a police officer with the twenty-seven years' experience. He was given authority by the task force in charge of team policing to do whatever was necessary to implement the program. The Flower Fund was specifically discussed at the monthly meetings of the task force and it was decided that the uses for the fund should be expanded. Because team policing was a new and experimental program, there were no established guidelines to aid Carraway in his decision making. He knew that the primary goals of team policing were increased involvement with the community and greater job satisfaction for the police officers. Given these goals, Carraway used the Flower Fund within the scope of the special order which restricted the disbursement of vending machine revenue for the benefit of the mem-

2. Rule 3, Section 3.102 reads:
    RESPONSIBILITIES OF A DISTRICT COMMANDER—Each district commander shall be responsible for all matters pertaining to the operation of the district that he commands and shall be accountable for the actions of all members of the Department assigned therein. The district commander is charged with the responsibility of planning, organizing and directing all efforts and activities of the district, with the correct transmission of all orders received, and with insuring adherence to all rules, regulations and order of higher authority. The district commander shall be responsible for the reporting of all police matters pertaining to his district that require reporting and he shall individually report and be responsible to the Chief of Field Operations, through the area commander.

3. Rule 9, Section 9.001(r) reads in pertinent part:
    Section 9.001 *General Duty Regulation.* In addition to the specific duties of each individual rank and position, as set forth elsewhere in this Manual, the following general duty provisions are applicable to all members of the Department and must be observed ... (r) neglect of duty, improper performance of duty, sleeping, or loafing while on duty, is subject to disciplinary action.

bers assigned to or within the district. The amount of money in the district's Flower Fund was more than adequate to meet the additional demands of the community and of the individual police officers. Carraway's expenditures merely reflected the broad latitude he was accorded in developing the team policing program and in furthering its goals.

Carraway's superiors were apprised of the disbursements in the district's quarterly reports and never questioned Carraway about the properiety of any one of them. In fact, the Department accepted the liquor for the police chiefs' convention and the check for the bullet-proof vests without objection. Carraway's superiors in the Department, as well as the task force members, considered the expenditures out of the Flower Fund as authorized. While it is unfortunate that a shortage occurred in the Flower Fund, but for the shortage, the expenses would have gone unchallenged. The record indicates that the Board's determination that Carraway's use of the proceeds of the Flower Fund violated his responsibilities as commander of the district was not supported by competent and substantial evidence.

■ We next consider whether there was substantial evidence to support the Board's decision that Carraway neglected his duty by giving the Flower Fund records to a bookkeeper who was not a member of the Department. The bookkeeper was to check the books to locate the error. Carraway and his aide both stated that they were unaware that a unit within the Department was available to conduct an audit of the Flower Fund's records. Carraway assumed that the discrepancy in the cash account was only a mathematical error which could be found by an experienced bookkeeper. He asked the bookkeeper at a church within the district to help locate the error.

Neither Carraway nor his aide were trained as bookkeepers. Overseeing the Flower Fund was just one of Carraway's many duties as commander of the district. When the shortage in the cash fund occurred, Carraway realized that it would be necessary to go back over several ledgers to uncover the mistake. To elicit the services of a trained person to aid him in performing his duties, even if that person was outside of the Department, does not rise to the level of "neglect of duty" or "improper performance of duties," as specified in Rule 9, Section 9.001(r). The Board's first point is denied.

In its second point, the Board challenges the trial court's determination that Rule 3, Section 3.102 and Rule 9.001(r) of the Police Manual were unconstitutionally vague and therefore void. The Board asserts that Carraway was "fairly apprised" of what acts constituted violations of the Police Manual rules. *See Milani v. Miller,* 515 S.W.2d 412, 416 (Mo.1974).

■ "[I]t is impossible for the police manual to precisely prescribe every affirmative duty or proscribe every act of misconduct for the myriad of factual situations that are presented to the police officer." *Cox v. Sayad,* 647 S.W.2d 884, 886 (Mo. App.1983). In the regulation of a large metropoliton police department, the necessities of discipline permit the establishment of a broad range of proscribed conduct without the detail and precision required in criminal statutes. *Milani,* 515 S.W.2d at 417.

■ Rule 3, Section 3.102 holds a district commander "responsible for all matters pertaining to the operation of the district that he commands" and "accountable for the actions" of the officers under his command. Rule 9, Section 9.001(r) makes "neglect of duty" subject to disciplinary action. Imprecise, generic terms such as these are acceptable in police manuals. *See Milani,* 515 S.W.2d at 415–19; *Plodzien v. Whaley,* 610 S.W.2d 63, 67–68 (Mo.App.1980). The rationale behind affording the Board discretion in the application of the Department's rules is that the members of the Department are usually familiar with their responsibilities and duties. *Milani,* 515 S.W.2d at 419. Yet, the Board's discretion

is not unfettered and must be tempered to avoid arbitrary enforcement of rules which are less precisely defined in the police manual.

In the present case, the evidence does not describe acts which are included within the general meaning of a commander's lack of "responsibility" or his "neglect of duty." The record indicates that the concept of team policing sanctioned expanding the uses for money in the Flower Fund; that Carraway's bookkeeping techniques were acceptable throughout the Department; that the Department never gave any direction to Carraway or to his aide to enhance the accuracy of the district's record keeping; that questionable expenditures listed in the quarterly reports went unchallenged by Carraway's superiors; and that a donation to the Department for bullet-proof vests was accepted and then used as a basis for the charges against Carraway. These facts might indicate less than precise bookkeeping practices in maintaining the records of the Flower Fund and perhaps a mistake in judgment in entrusting the books to a "civilian" bookkeeper. To label such acts as job irresponsibility or neglect of duty, however, would stretch the meaning of these terms in the Police Manual rules so as to be tantamount to arbitrary enforcement.

Although we acknowledge that the rules which Carraway violated are not unconstitutionally vague or facially invalid, we question their application to the facts in the present situation. Carraway could not have known that his actions in connection with his management of the Flower Fund contravened his duties and responsibilities as a district commander. We hold that Carraway was not "fairly apprised" that his acts constituted violations of the Department's rules and regulations.

The judgment of the Circuit Court reversing the Board is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.