**Joseph FERRARIO, Appellant,**

**v.**

**Robert J. BAER, John J. Frank, James Mosbacher, Sr., Homer E. Sayad, Charles Valier, Thomas W. Purcell, Robert F. Wintersmith, and Mayor Vincent C. Schoemehl, Jr., comprising the Board of Police Commissioners, St. Louis, Missouri, Respondents.**

**No. WD 38829.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied
March 15, 1988.

C. John Pleban, St. Louis, for appellant.

Richard Alan Cooper, St. Louis, for respondents.

Before KENNEDY, C.J., and SHANGLER and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Appellant Joseph Ferrario was found guilty of violating certain rules and regulations of the St. Louis Metropolitan Police Department (the "Department") and was terminated from the Department by the Board of Police Commissioners. Specifically, Ferrario was found to have carelessly and negligently discharged his firearm; to have knowingly submitted a false report; and to have failed to properly account for, secure, receipt and transport evidence coming into his custody. The charges and finding of guilt resulted from an incident in which Ferrario fired upon a fleeing female juvenile suspect, missing the suspect, but striking and killing a bystander. More details of the factual circumstances involved will be developed as necessary during the course of this opinion.

I.

Ferrario's first and last points on appeal are related and will be dealt with together. Ferrario asserts that the circuit court erred in affirming the findings of fact, conclusions of law, decision and order of the Board of Police Commissioners (the "Board") because they are not supported by substantial and competent evidence. Ferrario also asserts the circuit court erred in affirming the Board because the Board failed to examine all the evidence rendering the decision arbitrary and capricious and unsupported by the evidence.

■ "The scope of judicial review for an administrative agency decision is limited to a determination of whether or not the order is supported by competent and substantial evidence based upon the whole record." *Carraway v. Sayad*, 717 S.W.2d 280, 282 (Mo.App.1986); *Moran v. Whaley*, 608 S.W. 2d 446, 447 (Mo.App.1980). *See also*, RSMo § 536.140. In addition, the decision is subject to review to determine whether it was arbitrary, capricious or unreasonable, or whether the agency abused its discretion. *Citizens For Rural Preservation, Inc. v. Robinett*, 648 S.W.2d 117, 124 (Mo. App.1982) citing *Hermel, Inc. v. State Tax Commission*, 564 S.W.2d 888, 894 (Mo. banc 1978). Substantial evidence is competent evidence which, if believed, would have probative force on the issues. *Robinett*, 648 S.W.2d at 124. The evidence must be viewed in the light most favorable to the agency's decision. *Carraway*, 717 S.W.2d at 282; *Eubank v. Sayad*, 669 S.W.2d 566, 567 (Mo.App.1984). Where the evidence before an agency warrants either of two opposing conclusions, courts are bound by the agency's findings. *Robinett*, 648 S.W. 2d at 124. In sum:

> While we may not substitute our judgment for that of the agency, we must ascertain whether the agency could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it. If the findings of the agency are clearly contrary to the overwhelming weight of the evidence, we must reverse or order further appropriate action.

*Id., Carraway*, 717 S.W.2d at 282. Turning to the Board's findings, this court finds it must reject this point of Ferrario's appeal.

■ Charge I, for improper performance of duty, accused Ferrario of "carelessly and negligently" discharging his firearm by twice firing at a fleeing juvenile "in the area where innocent bystanders were in and about his line of fire." This court is perplexed by Ferrario's assertion no evidence supports the conclusion persons other than the suspect were in his line of fire. The circumstances resulting in this as well as the other charges involved Ferrario's

actions in attempting to take a juvenile suspect into custody. During an earlier confrontation, at which time Ferrario was unable to act because of his custody of another suspect, the juvenile was observed to be carrying a knife. Subsequently, Ferrario returned to the area, spotted the suspect, and left his car and went on foot in pursuit of the fleeing juvenile. The setting was a residential neighborhood on a July evening at approximately 10:00 p.m. Ferrario fired one shot into the air; when the suspect did not stop, Ferrario took a shot at her.

The Board found that Ferrario fired his first shot when the suspect "was approximately three houses away ... or sixty-five (65) feet and approximately twice that distance" at the firing of the second shot. These findings, consistent with evidence presented based on Ferrario's report of the incident, fully justify the conclusion that Ferrario carelessly and negligently discharged his firearm in the area where innocent bystanders were in and about his line of fire. Ferrario's complaints that he did not know persons other than the target were in his line of fire or that the Board failed to consider evidence of angles or ricochets are strained at best. Presumably, if the officer knew innocent bystanders were in his line of fire he would not fire. The fact is, Ferrario elected to stand in the middle of a city street lined with trees and houses, and fire at a running suspect who was approximately one hundred thirty feet away. A trained police officer must be held to the knowledge of the potential consequences of discharging his weapon in a setting where the possibility of unseen bystanders exists. Although the street was described as well lighted, the possibility of persons being on unlit porches or obscured by shrubbery is a very real one in a residential neighborhood. Significantly, Ferrario reported he did not take action with his gun during his earlier encounter with the suspect, when he saw the knife, because had he missed, the shot could have gone into a house. How the conclusion was reached to fire at a subject farther away and moving in front of or

between a row of houses is not explained. As to ricochet, to which an expert testified he could not be sure one occurred, it seems a possibility for which the officer should account in his decision to take a shot since the possibility of ricochet enhances the potential for a bystander being hit.

At a very basic level, the victim's death that resulted from Ferrario's shot is evidence there were people in his line of fire. Beyond that however, evidence was presented which, considered in the light most favorable to the agency's decision, was sufficient to support the conclusion that Ferrario carelessly and negligently discharged his firearm and justified his termination.

■ Charge II, for false reporting, involves a report on the shooting incident submitted by Ferrario. Specifically, the charge stated that Ferrario reported he " 'heard 3 or 4 rapid shots and quickly observed a muzzle blast ... [and] recognized the subject who was shooting at me to be alone and to be the wanted subject when in truth and fact the subject when observed ... was not armed ... and ... did not fire any shots.' " The Board's finding was at no time during the incident did Ferrario see the suspect fire a weapon or see her have a gun in her possession.

Ferrario's testimony taken alone is evidence enough to sustain the Board's finding on this charge. Contrary to his report, which indicated he "recognized who was shooting at me," his hearing testimony was that he "observed a muzzle blast and a female in that area where the muzzle blast was coming from" who he recognized as the suspect. Ferrario claims on appeal that the Board did not understand the false reporting charge since the semantical distinction being able to testify the shots were fired from the area where she was standing is "totally inconsequential to the charge of false reporting and it attendant specification." This court must disagree. The distinction between an officer's report which places a weapon in the hand of a recognized suspect shooting at him, as did Ferrario's report, and only reporting shots and muzzle blast from the direction of a suspect, as was Ferrario's hearing testimony, is clearly beyond inconsequential and goes to the essence of the false reporting charge. Taken in the light most favorable to the agency's decision, the evidence was sufficient to support the conclusion that Ferrario falsely reported on this aspect of his encounter with the suspect.

■ Charge III, for improper handling of evidence, accused Ferrario of mishandling a handgun he purportedly found on the night in question. Ferrario was specifically charged with failing to "maintain proper control over the firearm to insure the same was properly secured, receipted for and transported."

Ferrario charges the rule in question is so vague as to make its application impossible, that an officer is not advised what is prohibited or required of him. Ferrario focuses on the delivery requirement of a special order of the Department, arguing that there is no guidance as to when delivery must be made to the laboratory or identification divisions, or what procedure is followed when personal delivery is impossible. Although Ferrario is correct in asserting that the Baord found "ample time and opportunity to deliver the weapon to investigating officers at the scene," which may or may not be an action in compliance with the rule, the Board also found Ferrario did not "take any steps to properly secure said weapon as evidence...." Again, Ferrario's own testimony was sufficient to substantiate this finding and the conclusion that Ferrario mishandled the evidence. Upon spotting the weapon on the ground, Ferrario picked it up by using his pen and the pistol's trigger guard. After that point, however, Ferrario's testimony is that he did not remember where the weapon was until his handing it over to another officer; Ferrario was unclear whether it was in his pocket or his belt. The weapon was transferred hand to hand without regard for its evidentiary value. This court is persuaded that this is sufficient evidence to sustain the conclusion that Ferrario mishandled the evidence as charged.

In summary, the challenged findings of fact, conclusions of law and order of the Board were supported by substantial and competent evidence upon the whole record and are affirmed. Ferrario's contention that the actions by the Board were arbitrary and capricious is made up of challenges repeated from other points on appeal and dealt with in other sections of this opinion. It is also rejected.

## II.

█ Ferrario next contends he was denied his due process rights of a fair hearing because the Board, after deciding guilt on the charges, considered during the punishment stage his officer's "background sheet." Ferrario says the failure of the Board to allow him to attend the punishment phase and to see and rebut the department's background sheet on him should allow him a new hearing.

For this point he relies on *Tullock v. City of St. Charles,* 602 S.W.2d 860 (Mo. App.1980). There the circuit court set aside the city's demotion of the officer because of a denial of due process based on some of the members of the police board having seen a secret report on corruption in the police force. Tullock never had a chance to see nor rebut the contents of the report. Due process requires a fair hearing be granted to a party in an administrative hearing, and the party must be given an opportunity to be heard at a meaningful time and in meaningful manner. *Greater Garden Avenue Area Association v. City of Webster Groves,* 655 S.W.2d 760, 764 (Mo.App.1983).

Ferrario does not attack the Board rule which specifically makes the service record a part of the phase "assessing discipline." He does not contend the discipline meted out here, termination, was excessive based upon the charges which were sustained. This is not a situation where a penalty broader than charged or allowed was given. *Wilson v. Labor & Industrial Relations Commission,* 693 S.W.2d 328 (Mo. App.1985); *McCallister v. Priest,* 422 S.W.2d 650 (Mo. banc 1968). In any event, the court is not convinced the action com-

plained of amounted to a due process violation. The point is denied.

## III.

Ferrario's third point on appeal is that he was denied due process, equal protection and effective assistance of counsel in contravention of the fourth, fifth, sixth and fourteenth amendments to the United States Constitution as well as Rule 7.019 of the Police Manual. This point is based on the allegation that the previous Board, during whose term the Ferrario hearing was held, was composed of members who were biased, prejudiced, and in conflict of interest with Ferrario and not qualified to hear and decide the case. According to Ferrario, the prior Board's inaction in not disqualifying itself denied the new Board, which ultimately decided the case, the opportunity to view and judge witnesses, a right afforded all other police officers similarly situated.

█ At the outset, this court must reject Ferrario's allegation that Rule 7.019 of the Police Manual was not followed. As quoted by Ferrario, the rule requires hearings to be conducted by one or more members of the Board or by a hearing officer and one or more members of the Board. The hearing was conducted before hearing officer John J. Riley and member of the Board Homer Sayad in compliance with the rule. The question that remains is whether the allegations of a denial of due process/equal protection or effective assistance of counsel can be sustained.

Ferrario's theory for the allegation of such a denial is that since the Board in place of the time of hearing was not disqualified upon Ferrario's motion, the subsequent board was denied the opportunity to view witnesses and assess credibility to Ferrario's detriment. The motion for disqualification was based upon perceived bias and prejudice on the part of the Board sitting at the time of the hearing. Unanswered is how the bias and prejudice of a Board that did not make the ultimate decision served to prejudice Ferrario.

Ferrario's claim is based upon the decision making board's lack of opportunity to

view the witnesses. Under administrative law schemes, however, it is not uncommon for the ultimate decision makers to be a separate person or entity from the person or entity hearing the evidence and compiling the record. Missouri's provisions for administrative procedure allow such an approach, requiring in section 536.080.2 RSMo that "each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited, or referred to in the arguments or briefs." Here, the Board members who rendered the decision testified that they had read the entire record. *See, State ex rel. Powell v. Wallace*, 718 S.W.2d 545, 549 (Mo.App.1986); *Gamble v. Hoffman*, 695 S.W.2d 503, 508 (Mo.App.1985).

A case on point is *Schrewe v. Sanders*, 498 S.W.2d 775 (Mo.1973). The case involved the appeal of a police officer dismissed after being found guilty of conduct unbecoming an officer. *Id.* at 777. One of the officer's points on appeal charged that the findings and conclusions of the board were not rendered by a majority of the board who heard the evidence, observed the witnesses, and judged credibility, a charge based on the replacement of two of the four board members between the time of hearing and the time of decision. *Id.* The Supreme Court cited § 536.080.2, and stated the new members having read and considered the transcript and evidence before joining the decision, a second hearing was not necessary. *Id.* While Ferrario's case involves the replacement of the complete board, the logic of the *Schrewe* court is applicable.

The opinion notes that an administrative body is not bound by the findings of a referee who hears the witnesses and makes initial findings, but may review the record, determine credibility and weight therefrom, resolve conflicts and reach its own conclusion. *Id.* at 778. The opinion offers the "well-established proposition" that there is no denial of due process when members of an administrative agency who ultimately decide the case have not heard the witnesses or argument. *Id.* The court held finally:

> that since § 536.080, subd. 2, permits a commissioner to join in rendering a final decision if prior thereto he reads the full record, and since no rule demands that he be personally present to hear and observe the witnesses as they testify and procedural due process does not necessarily require it, the hearing granted in this case was reasonable and adequate where all of the testimony and evidence was before all members of the board who joined in the decision.

*Id.* Ferrario's hearing was properly conducted pursuant to a Department rule. The Board members rendering the final decision had before them all the testimony and evidence from the hearing. The Missouri law of administrative procedure requires no more. Because Ferrario cannot demonstrate prejudice from the procedure followed, this point of Ferrario's appeal is denied.

## IV.

■ Paraphrased, Ferrario's next argument suggests the Board terminated him because of the "pecuniary ramifications," so as "to limit its exposure to these federal suits...." As earlier recounted, the two companions of Banks had pending suits in federal court for emotional distress—the defendants being Ferrario and the Board. Without support in the record, and without applicable authority Ferrario opines the Board thought of nothing except limiting its liability and that it could do so by firing him, the result being he was not tried by a fair and impartial tribunal. His brief states:

> In that way, the Board could argue in the Federal Court that Ferrario acted beyond the scope of his authority with no notice to the Board and therefore, the master incurs no liability for the improper acts of its servant. As such, it is potentially in the Board's interest to find Ferrario guilty and terminate him thereby bolstering its position in that ancillary litigation. This type of justice hardly satisfies the appearance of justice.

He relies on *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); and *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), for the legal proposition that a person has the constitutional right to stand trial before an impartial judicial officer who has no interest, pecuniary or otherwise, in the outcome. Those cases involved such pecuniary interests as having judicial officer's salaries coming out of fines they assessed in court.

The court fails to follow the appellant's reasoning to the effect the Board could somehow escape liability for Ferrario's prior acts in pending federal suits (the case of Banks wrongful death having already been settled) by later firing Ferrario. There is no legal support for the proposed theory of the Board being able to waltz away from litigation by firing the officer who committed the acts which may be subsequently found to have caused liability to attach to himself and the Board. This point is denied as is his alternate request to remand the case to the circuit court to hear the case *de novo* as it flies in the face of Section 84.150, RSMo 1986, review of administrative cases, which as applicable here states officers are "... subject to removal only for cause after a hearing by the board, who are hereby invested with exclusive jurisdiction in the premises." An aggrieved party may obtain *judicial review of the* administrative decision, § 536.100, RSMo 1986; the court hears the case on the "petition and record as filed," § 536.140, RSMo 1986. "On apepal of administrative decisions, review is limited to a determination whether the decision was supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, unreasonable or an abuse of discretion." *Ross v. Robb*, 662 S.W.2d 257, 259 (Mo. banc 1983).

The judgment is affirmed.