Morty LEBEDUN, M.D., Western Missouri Mental Health Center, Appellants,

v.

Geraldine ROBINSON, et al., Respondents.

No. WD 41072.

Missouri Court of Appeals, Western District.

March 28, 1989.

William L. Webster, Atty. Gen., Nancy K. Yendes and P. Ann Dirks, Asst. Attys. Gen., Kansas City, for appellants.

Michael T. Murphy, Kansas City, for respondents.

Before KENNEDY, C.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Plaintiff-appellant, Morty Lebedun, Western Missouri Mental Health Center, appeals the trial court's decision upholding the Personnel Advisory Board's order reversing the dismissal of defendant-respondent, Geraldine Robinson. The Honorable James McHenry of the Cole County Circuit Court found that the Board's decision is lawful in all respects and is supported by competent and substantial evidence upon the record as a whole. We affirm.

On March 22, 1987, defendant was employed as a Cook II at the Western Missouri Mental Health Center. Prior to that date, in either January or February 1987, an attempted theft of ten pounds of bacon, cans of orange juice and a large number of chicken ribs was apparently thwarted when the food was found on the premises prior to its removal. This led to a crackdown on employees taking food which included all employees attending a speech on facility policy about taking food. This speech was in addition to an employee orientation and the posting of a Standard Operating Procedure on policy and procedure on food use in the food service department. This Standard Operating Procedure was in effect on March 22, 1987.

On March 22, 1987 Ronald Hervey, a Cook II, was working in the kitchen area of Western Missouri Mental Health Center.

Mr. Hervey worked his entire shift that day with defendant.

Mr. Hervey testified that he observed defendant open a refrigerator where State food was kept, remove parts of chicken, and prepare the chicken and dressing. He also testified that he saw defendant use various chicken parts in the chicken and dressing including chicken necks, breasts, legs, quarters and thighs. The dressing was prepared in a full two-inch lined pan.

Although chicken and dressing was not on the menu for March 22, 1987, Mr. Hervey said nothing to defendant because he thought a supervisor, Mrs. Ida Mae Cox, was able to observe the preparation of the chicken dressing. However, Mrs. Cox could not see defendant. Mrs. Cox was a Cook III and was in charge of the kitchen on Sundays when no other supervisor was present.

During the lunch break, defendant invited two others, Lisa Farrell and Catherine Williams, to dine with her on the chicken and dressing prepared during her shift. Although there was a facility regulation against fixing one's own food in the kitchen, Lisa Farrell partook of the dressing when offered by defendant. Ms. Farrell testified that she noted a flavor of chicken in the dressing, however, she testified that she did not see any chicken in the dressing itself offered to her and did not know where defendant got the dressing.

Mr. Hervey testified that he saw defendant with the chicken and dressing again about 12:45 p.m. or 1:00 p.m. on that day, when he observed her scoop the dressing from the pan into a plastic bag. At the end of his shift, he testified that he saw defendant with the bag of dressing she had prepared as she walked out of the kitchen. He did not see her leave the hospital grounds.

Defendant testified that she had seen many chicken necks thrown away in the eight years she had worked at Western Missouri Mental Health Center. Both Mr. Hervey and Ms. Farrell also testified to the same. Defendant also testified that she thought the chicken necks were garbage since she had been told to throw away the chicken necks.

Mr. Hervey reported defendant's actions in preparing the dressing by giving a written statement to Joan Eggers, the Department Head in Dietary. After receiving the written report, Mrs. Eggers contacted Charles Edward Lidge, Chief of Security at Western Missouri Mental Health Center, and the two interviewed defendant on March 24, 1987. The interview lasted five (5) minutes. Defendant voluntarily provided Chief Lidge and Mrs. Eggers with a written statement in which she admitted using only chicken necks to make a dressing and feeding herself and two others, Lisa Farrell and Catherine Williams, lunch on March 22, 1987.

Because it was suggested that Mrs. Cox may have given permission to defendant to use chicken necks to make a dressing on March 22, 1987, Mrs. Eggers spoke to Mrs. Cox. Mrs. Cox denied giving permission to anyone to use chicken necks to make a dressing and provided Mrs. Eggers with a written statement to this effect which was admitted without objection at the hearing before the Personnel Advisory Board after it was established that Mrs. Cox was an invalid and no longer employed by appellant.

By letter dated April 13, 1987, defendant was informed that she would be dismissed from her employment effective April 20, 1987, unless she could show reasons why the dismissal should not be effected. Defendant met with Marcella Ridlen Ray, Director of Human Resources at Western Missouri Mental Health Center, on April 20, 1987. Mrs. Ray prepared a memorandum to the superintendent of the facility setting forth the points defendant wanted him to consider in deciding whether or not her dismissal should be effected. She admitted to Mrs. Ray that she had boiled chicken necks and made dressing with cornbread in a container twelve inches square without asking for permission. Mrs. Ray provided defendant with a copy of this memorandum and an accompanying sketch by way of letter dated April 27, 1987. Defendant's employment was termi-

nated pursuant to Department Operating Guidelines on Discipline, Section VIII, b and f.

Defendant testified that on March 22, 1987, she did in fact take chicken, which she described as necks, from a refrigerator area. However, she stated that she was told to throw the necks away. She therefore considered them to be garbage and not food meant for the patients. Defendant prepared a dressing in a $5 \times 8$ small pan with ingredients brought from home and the necks. Defendant also testified that she and the other two ladies consumed all of the chicken and dressing. She denies putting any leftovers in a plastic bag as stated by Mr. Hervey.

Defendant testified that she had never taken any food in the kitchen area before to eat and that chicken necks were not used for broth in the eight years she had been employed at Western Missouri Mental Health Center. She stated that chicken stock was used to make broth. The chicken stock is bought.

On November 13, 1987, the Board issued its Findings of Fact, Conclusion of Law, Decision and Order. In its Findings of Fact, the Board found that defendant did remove parts of chicken from the refrigerator and prepare chicken and dressing which she consumed herself and fed to two others in the cafeteria. The Board also found that the Standard Operating Procedure was posted in the kitchen area where defendant could have seen it. Although the Board found a breach of the plaintiff's rules, it did not find that defendant's infraction was sufficient to justify a disciplinary action so severe as dismissal because plaintiff had failed to show that defendant removed food from the premises of the facility. The Board then reversed the dismissal of defendant, and Western Missouri Mental Health Center filed a timely Petition for Review with the Circuit Court of Cole County.

█ Appellate review of an administrative decision is limited to the agency's decision and not the circuit court's. *Cunningham v. Board of Aldermen of Overland,* 691 S.W.2d 464, 466 (Mo.App.1985).

█ In the review of an administrative decision, the court is to consider whether the agency's decision exceeded its statutory authority, was unsupported by competent or substantial evidence on the whole record, is authorized by law, is arbitrary, capricious or unreasonable, or involves any abuse of discretion. § 536.140, RSMo 1986. This Court may not substitute its own judgment on the facts for that of the administrative agency. *Kunz v. Personnel Advisory Board,* 740 S.W.2d 395, 397 (Mo. App.1987). If the evidence would support either of two findings, the Court is bound by the agency's decision and has no authority to determine credibility of witnesses. *Rockenfield v. Missouri Department of Corrections and Human Resources,* 740 S.W.2d 230, 231–32 (Mo.App.1987); *see also Ferrario v. Baer,* 745 S.W.2d 193, 195 (Mo. App.1987).

The Personnel Advisory Board is vested with the authority to review dismissals of employees by the Appointing Authority. § 36.390, RSMo 1986. After the hearing and consideration of the evidence, the Board may either approve or disapprove the employee dismissal. § 36.390.5(1)–(3), RSMo 1986.

In the case at bar, the Board heard and weighed testimony from several persons. Three witnesses testified that chicken necks were often thrown away. Defendant testified that she was told to throw the chicken necks away. Defendant denied that any scraps of chicken or the dressing were taken from the premises. No witness or evidence refuted any of the aforementioned testimony.

█ The evidence on judicial review of an agency's decision must be viewed in the light most favorable to that decision. *Ferrario,* 745 S.W.2d at 195. If two conclusions are possible, the courts are bound by the agency's findings. *Id.* The Board, in finding that defendant's breach of the Appointing Authority's rules was not sufficient to justify dismissal, could have come to the conclusion that there was not an *unauthorized* removal or usage of state property for her own use, or theft. Based

upon the evidence and testimony, the Board could also have found that the past practices by the Appointing Authority supported defendant's assertion that the chicken necks were garbage at the time she used them. These findings led the Board to the conclusion held that the dismissal of defendant was not for the good of the service. Contrary to appellant's claim, there was no redefinition of defendant's employment contract or employer/employee expectations by the Board.

The Board's ruling does state that defendant's actions were in violation of the Appointing Authority's regulations, although the ruling does not indicate which regulation defendant violated. Defendant's violation, however, did not warrant dismissal. This is to say that defendant could have been charged with a lesser violation of the Appointing Authority's regulations such as consumption of food intended for client use. Therefore, based upon the record as a whole, the Board's ruling was supported by competent and substantial evidence.

██ The last point raised on appeal is that defendant should be awarded damages on the ground that this appeal is frivolous. Rule 84.19. We disagree. Generally, a frivolous appeal is one which presents no justiciable question and is one so readily recognizable as devoid of merit on the face of the record that there is little prospect that the appeal can succeed. *O'Dell Plumbing, Heating, and Cooling, Inc. v. Clayton Greens Nursing Center, Inc.*, 676 S.W.2d 528, 532 (Mo.App.1984); *Holman v. Ace Glass Co.*, 687 S.W.2d 562, 563–64 (Mo. App.1984). The remedy of damages is drastic and should be assessed only when issues and questions are presented in bad faith or are not fairly debatable. *Forms Manufacturing, Inc., v. Edwards*, 705 S.W.2d 67, 70 (Mo.App.1985); *Doran, Inc. v. James A. Green, Jr. & Co.*, 654 S.W.2d 106, 110 (Mo.App.1983). Good faith is shown even by the presence of some slight merit. *Breshears v. Malan Oil Co.*, 671 S.W.2d 402, 404 (Mo.App.1984).

██ In the case at bar, Western Missouri Mental Health Center raised a viable claim that the Board exceeded its jurisdiction and authority in its ruling by allegedly redefining defendant's employment contract and the meaning of "theft". Although this Court has found otherwise, when a claim of error is valid as a matter of law, the appeal should not be determined to be frivolous. *Smith v. Normandy School District*, 734 S.W.2d 943, 949 (Mo.App.1987).

Although damages are considered on a case-by-case basis, they are generally assessed to prevent appellate dockets from becoming swamped with unmeritorious appeals and to provide compensation for respondent's costs in such matters. *Doran*, 654 S.W.2d at 110. The appeals process has not been purposefully delayed in its submission, having filed all stages within the appropriate timelines. The Court has the power to assure that Rule 84.19 is allowed to correct abuses rather than intimidate prospective appellants. *Id.* at 111. Therefore, defendant's request for damages under Rule 84.19 is denied.

██ The respondent, Personnel Advisory Board, has submitted a motion to be dismissed from this appeal. Pursuant to Section 36.390.5, RSMo 1986, the Personnel Advisory Board conducts hearings in cases where a merit system agency of the State of Missouri dismisses, involuntarily demotes or suspends an employee for more than five working days. The Board hears the case to determine whether or not the employee is correct in his assertion that the action taken against him was for political, religious or racial reasons or was not for the good of the service. The Board does not have an independent role in these proceedings but acts only as an impartial hearing officer to conduct and decide the contested case between the agency and the employee. The Board, as an agency, has no interest in the outcome of the case before it. In a similar manner, except where the Board's procedures or rules are directly attacked, the Board has no true interest in protecting its decision on appeal.

██ In this regard, the Board's role is very similar to that of the Administrative Hearing Commission. The Administrative Hearing Commission is not a proper party

to an appeal from one of its decision. *Geriatric Nursing Facility, Inc. v. Department of Social Services,* 693 S.W.2d 206 (Mo.App.1985). In *Geriatric,* this Court stated that "[i]t is the agency and the outside party who contend for their respective positions. From the decision, either the agency or the affected party may appeal, and the Administrative Hearing Commission has no part in that review." *Id.* at 209. The above-quoted statement would be equally true if the Board was substituted for the Administrative Hearing Commission, the appointing authority (employer) were substituted for the agency and the employee was substituted for the outside party.

This Court revisited this issue in *Baer v. Civilian Personnel Division, St. Louis Police Officers Association,* 714 S.W.2d 536 (Mo.App.1986). Citing its decision in *Geriatric,* this Court found that the Board of Mediation was not a necessary party to review a proceeding arising from a case in which the Board had no interest in the outcome of the litigation. *Id.* at 538. The Court elaborated on its reasoning in *Geriatric* regarding the inappropriateness of including the quasi-judicial agency as a party on review of the agency's decision. *Id.* The role of the Board in the case at bar was no greater than the role of the Administrative Hearing Commission in *Geriatric.* Therefore, the Board's Motion to Dismiss is granted.

The judgment of the Personnel Advisory Board is affirmed.

LOWENSTEIN, J., concurs in separate opinion.

LOWENSTEIN, Judge, concurring.

There can be no quarrel with Judge Gaitan's opinion and result as to the merits of this case. It is difficult to read and hear the argument in this case without smiling. What takes this appeal out of the category of being a laughing matter is the fact the employee has had to retain counsel to argue the case in the circuit court in Jefferson City and again here in this court. The employee is a cafeteria worker who, at best was the subject of overkill by one of the

institutions of one of our largest state agencies. After the fact finder held in her favor, Western Missouri with the free aid of the fine staff of the attorney general, and without having to pay costs, has prosecuted this appeal. The time and expense of this appeal to the state, to the judicial system and to one of our citizens cannot be justified nor laughed away. The state, and particularly Western Missouri owes a duty to be firm but fair, but not to flout their power and might. This appeal comes perilously close to an abuse of that might.