**Mary BECK, Complainant–Appellant,**

v.

**Paul T. JAMES, Superintendent Palmyra R–I School District, Respondent–Respondent.**

No. 57650.

Missouri Court of Appeals, Eastern District, Division Two.

June 5, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied Sept. 11, 1990.

Daniel R. Schramm, Schramm & Pines, St. Louis, for complainant-appellant.

Thomas A. Mickes, Mary McGrath Tonkin, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, for respondent-respondent.

CRANDALL, Judge.

Mary Beck appeals from the judgment of the trial court affirming the decision of the Board of Education of Palmyra R–I School District (Board) to terminate her contract as a permanent teacher. We affirm.

■ The scope of judicial review for an administrative decision is limited to a determination of whether or not the order is supported by competent and substantial evidence based upon the whole record, whether the decision was arbitrary, capricious or unreasonable, or whether the administrative action constituted an abuse of discretion. *Gamble v. Hoffman,* 732 S.W.2d 890, 892 (Mo. banc 1987). The evidence must be viewed in the light most favorable to the decision of the Board. *Lebedun v. Robinson,* 768 S.W.2d 219, 222 (Mo.App.1989). Neither this court nor the circuit court may substitute its judgment for that of the Board. *Carraway v. Sayad,* 717 S.W.2d 280, 282 (Mo.App.1986). If the evidence would support either of two findings, the court is bound by the Board's decision and has no authority to determine credibility of witnesses. *Lebedun,* at 222.

■ We must determine, however, if the Board's findings and conclusions are reasonable in light of all the evidence presented. *Carraway,* at 282. If they are clearly contrary to the overwhelming weight of the evidence, it is our duty to reverse the Board's decision. *Id.*

At the time proceedings were initiated to terminate her teaching contract, Beck had been a teacher in the Palmyra R–I School District (Palmyra) for 19 years and had been in the teaching profession for 29 years. She was one year short of teaching the 30 years necessary to draw full pension benefits. She taught mathematics exclusively, for the first 17 years at Palmyra until she was reassigned to teach sixth grade reading, spelling, mathematics and social studies. Her primary certification was elementary education, which includes education in all major subject areas.

The principal of Palmyra (principal) had been in the educational field for 19 years, the last seven of which she spent as a principal. Principal began her job at Palmyra and met Beck in the fall of 1985. In 1987 principal made written evaluations of a number of teachers at Palmyra, and Beck received the worst evaluation. In March of 1988 principal served Beck with a notice of deficiency that, if not remedied, might lead to formal charges being brought against her. The areas of deficiency cited were Beck's instructional methods, communication and classroom management.

A three month probationary period followed wherein the superintendent of Palmyra (superintendent) assigned principal to observe and assist Beck in remedying all alleged deficiencies. Principal observed Beck's classes several times a week and had weekly conferences with Beck to review her observations. Principal made three written evaluations of Beck, none of which Beck questioned, critiqued, or debated in writing. Additionally, principal made recommendations to Beck for improvement, gave Beck access to written materials and in-service programs, and offered Beck time

away from her regular teaching responsibilities to observe other teachers.

Superintendent conferred with principal at the end of the probationary period. Based on her two years of observing and assisting Beck, principal recommended that Beck's contract be terminated. Superintendent determined that Beck had not remedied her deficiencies, so he served Beck with eight detailed, written charges of incompetency and inefficiency, together with a notice of hearing. At hearing Beck admitted, "I will say the charges that they have—that are listed are well documented. I will attest to that and let it go at that at this time."

Palmyra submitted nearly one hundred pages of exhibits documenting over two years of principal's observations, summative evaluations of Beck's performance, formal recommendations to Beck for improvement ("job targets"), and notes of conferences with Beck. Principal testified to the veracity of this documentation and to complaints principal received from parents about Beck's teaching. These exhibits included numerous examples of Beck's written errors in spelling, punctuation and grammar—many of which appeared on writings for students' viewing. Within these exhibits, Beck not only misspelled the names of 26 of her students but also misspelled her own name. Further, Beck admitted she has had life-long difficulties with spelling and grammar.

In Beck's defense, thirteen witnesses (current and former students, parents of current students, and fellow teachers) testified to Beck's competency as a teacher. To the same effect, Beck also submitted seven different letters and affidavits from former students and parents of current students.

Board issued its Findings of Fact, Conclusions of Law and Decision terminating Beck's indefinite teaching contract. Beck appealed. Beck then went to a clinical psychologist (psychologist) who diagnosed her as having a learning disability that directly affected her spelling, punctuation and grammar. Psychologist placed her, however, in the bright/normal range of intellectual functioning. The trial court re-

manded the case to Board for consideration of psychologist's report. District submitted a critique by experts of the report claiming the report did not conclusively establish that Beck's test results were caused by a learning disability.

Board reaffirmed its prior decision, specifically finding that Beck was not within the class of handicapped persons protected under Section 213.055, RSMo (1986) and that Beck's dismissal was not a result of any alleged handicap. The trial court affirmed Board's amended decision.

■ For her first point, Beck claims Board erred in terminating Beck's contract because Board's decision was not supported by competent and substantial evidence on the record as a whole. "[T]here is a strong presumption of validity in favor of a school board's decision because the courts are reluctant to interfere with a board's broad discretion in matters affecting school management." *Bell v. Board of Education of the City of St. Louis,* 711 S.W.2d 950, 955 (Mo.App.1986).

Beck first argues that Board's decision rested entirely upon principal's evaluations of Beck during her last two years at the district and on hearsay parent complaints about Beck's methods. This argument disregards not only the scores of examples of Beck's errors in spelling, punctuation and grammar, but also Beck's admissions that (1) all eight charges against her were correctly documented; (2) she has had life-long difficulties in spelling and grammar; and (3) she had received complaints from two prior principals about her inefficiency and incompetency as a teacher.

Beck also argues that principal's opinion that Beck harmed her students was unfounded, because there was no evidence of actual harm to the students. Section 168.-114.1(3), RSMo (1986) provides that incompetency and inefficiency are grounds for termination. Incompetency is defined as the inability to perform professional teaching duties in a manner acceptable to the Board. *Artherton v. Board of Education of the School District of St. Joseph,* 744 S.W.2d 518, 522 (Mo.App.1988). There is

no requirement of evidence of actual harm to the students to meet that burden.

Additionally, Beck notes the uncontradicted evidence that school authorities failed to take any action towards terminating her contract during her first 17 years of employment. Beck argues it is highly suspect that Board terminated her contract one year short of the 30 years required to receive full pension benefits. This argument employs mere speculation. Moreover, it ignores Palmyra's offer to Beck to finish her 30th year as a teacher's aide. There is no provision in the Teacher Tenure Act, Section 168.102 et seq. RSMo (1986), affording extra procedural or substantive rights to teachers with 29 years of teaching experience.

From the foregoing, we cannot say that Board's decision is unsupported by competent and substantial evidence in the record as a whole. Point one is denied.

■ For her second point, Beck claims that Board erred in dismissing her because Board's decision was arbitrary, capricious, unreasonable, an abuse of discretion and contrary to the procedural and substantive protections in the Teacher Tenure Act. The purpose of the Act is to establish strictly defined grounds and procedures for removing a permanent teacher which may not be evaded or other procedures substituted therefor. *Smith v. Normandy School Dist.*, 734 S.W.2d 943, 944 (Mo.App. 1987).

Beck failed to raise any alleged procedural or substantive deficiencies before either the Board or the trial court. Board made no findings of fact or law relating to these alleged deficiencies. We will not set aside an administrative action unless the agency has been given a prior opportunity, upon timely request, to consider the point. *Smith* at 949. The question of procedural and substantive deficiencies has not been preserved. *Id.*

Beck argues in the alternative that, even if there were no procedural or substantive deficiencies, Board's decision is nevertheless arbitrary, capricious, unreasonable and an abuse of discretion. We have addressed this argument in our discussion of Beck's

first point above and decline to discuss it further here. Point two is denied.

For her final point, Beck argues that Board erred in terminating Beck's contract because Board unlawfully discriminated against her on the basis of an alleged learning disability in violation of Section 213.055, RSMo (1986). Assuming *arguendo* that this is an issue that can be raised in this proceeding and, further, that the contract of a teacher with a learning disability cannot properly be terminated, we review Board's findings of fact that Beck did not have a learning disability and that her dismissal was not the result of any alleged handicap.

■ If evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding. *Franklin v. Board of Directors, School Dist. of Kansas City*, 772 S.W.2d 873, 878 (Mo.App. 1989). Moreover, in order to state a *prima facie* case for handicap discrimination, the complainant must prove, *inter alia,* that she is a member of a protected class and that the disability was a factor in the decision to fire her. *Laclede Cab Company v. Com. on Human Rights*, 748 S.W.2d 390, 397 (Mo.App.1988). The complainant has the burden to prove by a preponderance of the evidence that she is qualified to do the job. *Id.* at 394–95.

■ Beck's experts diagnosed her as having a learning disability. District's experts critiqued this diagnosis as formed from employing an incorrect measurement and as incomplete in analysis for failing to rule out several other possible causes (i.e. anxiety, memory loss, dementia, malingering). Board did not err in finding Beck was not handicapped as defined in Section 213.055, RSMo (1986).

Further, the alleged handicap affected only three of the eight charges against Beck. The remaining five charges focus on Beck's incompetency in instructing her students and are, standing alone, justification for the termination of her contract. Board

did not err in finding that Beck's dismissal was not the result of an alleged handicap. Point three is denied.

The judgment of the trial court is affirmed:

PUDLOWSKI, P.J., and KAROHL, J., concur.